PP0570C

RECORDING REQUESTED BY:
Countrywide Home Loans Servicing, LP
Attn: Home Retention Division
100 Beecham Drive
Pittsburgh, PA 15205

610  070471482  MOD 001  001

Doc ID #: 00070471482 MOD

------SPACE ABOVE THIS LINE FOR RECORDER'S USE------

## LOAN MODIFICATION AGREEMENT
(Step Rate)

This Loan Modification Agreement ("Agreement"), made this 25th day of February, 2009, between CONSTANCE DANIELS (the "Borrower(s)") and Countrywide Home Loans Servicing LP (the "Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the 31st day of January, 2005 and recorded the 31st day of January, 2005, in the Official Records of County, in the State of FL, and (2) the Note and Adjustable Rate Rider and secured by, the Security Instrument, and (3) any prior agreements or modifications in effect relative to the Note and Security Instrument which covers the real property described in the Security Instrument and defined therein as the 'Property', located at 3927 DUNAIRE DRIVE, VALRICO, FL 33594, collectively the prior documents shall be referred to herein as the "Note and Security Instrument".

The real property described being set forth as follows:

SAME AS IN SAID SECURITY INSTRUMENT [SEE ATTACHED "EXHIBIT A"]

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note and Security Instrument):

1. Amount of Borrower's Unpaid Principal Balance

   As of the 1st day of April, 2009, the amount payable under the Note and Security Instrument (the "Unpaid Principal Balance") is U.S. $189,911.00, consisting of the amount(s) owed by the Borrower to the Lender and which may include, but are not limited to, any past due principal payments, interest, escrow payments, fees and/or costs ("Unpaid Amounts") which you have agreed shall be capitalized (added to the amount you originally borrowed) as one of the terms of this agreement. Any late/delinquency fees associated with overdue loan payments remaining unpaid as of the date immediately before this modification have been be waived and not included in this capitalization. The Borrower understands that capitalizing the Unpaid Amounts may result in the Borrower paying more interest over the life of the loan.

2. Borrower's Promise to Pay

   The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender. If on the 1st day of March, 2035 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

   The Borrower will make such payments at 7105 Corporate Drive, (PTX-B-36), Plano, TX 75024 or at such other place as the Lender may require.

3. Amount of Borrower's Initial Scheduled Monthly Payments

   As of the 1st day of May, 2009, the scheduled monthly payment will be in the amount of U.S. $813.25. The scheduled monthly payment may change on that day of every twelfth month thereafter as described in Section 4 of this Loan Modification Agreement. The Lender will notify the Borrower prior to the date of change in the scheduled monthly payment. During the Interest-Only period, the amount of the monthly payment also may change if the Borrower makes voluntary prepayments of principal.

   (A) Monthly Payment Changes
   Changes in the monthly payment will reflect changes in the unpaid principal and in the interest rate that the Borrower must pay. The Lender will determine the changed amount of the monthly payment in accordance with Section 5 of this Loan Modification Agreement.

4. Interest Rates

   As of the 1st day of April, 2009, the Borrower will pay interest at a yearly rate of 3.875%. Each date on which the interest rate changes is called a "Change Date." Thereafter, the interest rate that Borrower will pay and the dates when the interest rate will change are set forth below:

**EXHIBIT A**

*70471482+USC+AG+9031+5*

Interest Rate Increases. The interest rate Borrower will pay will change as indicated below.

| Extended Interest Only Payment Period | | Principal and Interest Payment Period | |
|---|---|---|---|
| Change Date | Interest Rate | Change Date | Interest Rate |
| 04/01/2010 | 4.125% | 04/01/2019 | 6.625% |
| 04/01/2011 | 4.375% | 04/01/2020 | 6.99% |
| 04/01/2012 | 4.625% | 04/01/2021 | 6.99% |
| 04/01/2013 | 4.875% | 04/01/2022 | 6.99% |
| 04/01/2014 | 5.125% | 04/01/2023 | 6.99% |
| 04/01/2015 | 5.5% | 04/01/2024 | 6.99% |
| 04/01/2016 | 5.875% | 04/01/2025 | 6.99% |
| 04/01/2017 | 6.25% | 04/01/2026 | 6.99% |
| 04/01/2018 | 6.625% | 04/01/2027 | 6.99% |
| | | 04/01/2028 | 6.99% |

After the last Change Date, the interest rate shall remain the same until such time as the principal and interest due under the Note are paid in full.

5. Monthly Payment Changes

   (A) Change Dates
   Each date on which the interest rate changes is called a "Change Date."

   (B) Interest-Only Payments
   The first ten years following the execution of this Loan Modification Agreement are known as the "Interest-Only Period." On the first Change Date and continuing through the 11th Change Date (to the extent Section 4 provides for 11 or more rate changes), the amount of the new scheduled monthly payments will be determined by dividing the new interest rate by 12 and multiplying the result by the then unpaid principal. If the Borrower makes a voluntary prepayment of principal during the Interest-Only Period, the next monthly payment will be less. The lower monthly payment amount will be determined by dividing the new interest rate by 12 and multiplying it by the then unpaid principal. If the Borrower makes a voluntary prepayment of principal after the due date of a scheduled monthly payment, the prepayment amount will be credited immediately, but the reduction in the amount of the monthly payment may not be reflected on the billing statement until the following month.

   (C) Principal and Interest Payments
   On April 1, 2019 and on every Change Date thereafter, the Lender will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that the Borrower is expected to owe at the Change Date in full on the Maturity Date at the new interest rate in substantially equal payments. The result of this calculation will be the amount of the new scheduled monthly payment.

6. Impact of this Agreement on the New Interest-Only Monthly Payments and on the Amount of Interest Borrower Will Pay Over the Life of the Loan

   The Borrower understands that by agreeing to add the unpaid past-due payments, including unpaid and deferred interest, fees, and other costs (collectively 'Unpaid Amounts') to the Unpaid Principal Balance, the added Unpaid Amounts accrue interest based on the interest rate in effect. The Borrower also understands that this means interest will now accrue on the unpaid interest, and that this would not happen without this Agreement.

   The Borrower understands the result of this Agreement is to increase the amount of interest that will be owed over the term of the loan. This is because the amount of principal is higher and the interest due is recalculated because it is charged on that higher principal amount.

7. Impact of this Agreement on Monthly Payments at the End of the Interest-Only Period – the First Principal and Interest Payment Due Date:

   After the Interest-Only Period ends, the Borrower understands the monthly payment will increase—even if the Borrower's interest rate stays the same—because the Borrower must start repaying the principal, as well as the interest, for the remainder of the loan term. Because this Agreement results in the Unpaid Amounts being added to principal, the amount of principal that is due with each monthly payment will also increase, which results in a bigger monthly payment. The Borrower also understands the need to plan for this increase in the amount of the monthly payment when the Interest-Only Period ends and that at that time the Borrower will no longer have the choice of paying only the Interest-Only monthly amount. The Borrower understands that the increase in the monthly payment amount at the First Principal and Interest Payment Due Date could be significant and result in a condition referred to as payment shock.

8. Understanding the Monthly Statement During the Interest-Only Period

   The Borrower understands that the Interest-Only Loan Monthly Statement during the Interest-Only Period will offer the Borrower more payment options than just the Interest-Only Payment. Although the Borrower's Interest-Only loan offers the freedom to pay only the interest portion of the payment due each month for a specified period of time, the Borrower also understands he or she has the choice to pay additional amounts, which will assist the Borrower in paying down the principal balance. If the Borrower chooses to pay extra money beyond the Interest-Only payment amount in a given month, the Borrower understands this will reduce the principal owed. The next month, the Interest-Only payment amount the Borrower owes (assuming there has been no change in the interest rate on the Borrower's loan) will be lower. This is because the amount of principal is lower and the interest due is recalculated because it is charged on that lower principal amount. The Borrower understands that paying more and reducing principal can also mean that the Borrower will build equity in the home more quickly. The Borrower understands that the Amortized Payment Choice and 15-Year Amortized Payment Choice shown on the Interest-Only monthly statement provide the Borrower with easy ways each month to select a payment that reduces the Borrower's principal. The Borrower may, however, pay any amount above the Interest-Only Payment amount.

9. Effective of This Modification Agreement

   Nothing in this agreement shall be understood or construed to be a refinance, satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security

Instrument will remain unchanged, and the Borrower and the Lender will be bound by, and comply with, all terms and provisions thereof, as amended by this Agreement.

10. Borrowers Agreement to Assist With Lost, Misplaced, Misstated, Inaccurate or Missing Documents

In consideration of this Modification, the Borrower agrees that if any document related to the Note and Security Instrument and/or Modification is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, the Borrower will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced the Lender hereby indemnifies the Borrower(s) against any loss associated with a demand on the original note. All documents the Lender requests of the Borrower shall be referred to as "Documents." The Borrower agrees to deliver the Documents within ten (10) days after receipt by the Borrower of a written request for such replacement.

As evidenced by their signatures below, the Borrower and the Lender agree to the foregoing.

_Constance Daniels_ Dated: 3/19/09
CONSTANCE DANIELS

STATE OF  FLORIDA
COUNTY OF  HILLSBOROUGH

On MARCH 19, 2009 before me, DENNIS JAYAG Notary Public, personally appeared CONSTANCE DANIELS FLDL D542-100-67-719-0
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within Instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures (s) on the Instrument the person(s), or entity upon behalf of which the person(s) acted, executed the Instrument.

WITNESS my hand and official seal.

DENNIS JAYAG
Comm# DD0554522
Expires 5/21/2010
Florida Notary Assn. Inc

_____
Signature

*******************************************

Countrywide Home Loans Servicing LP

By: _____ Dated: _____

STATE OF _____
COUNTY OF _____

On _____ before me, _____ Notary Public, personally appeared

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within Instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures (s) on the Instrument the person(s), or entity upon behalf of which the person(s) acted, executed the Instrument.

WITNESS my hand and official seal.

_____
Signature

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

WELLS FARGO BANK, N.A
**Plaintiff**

Case No: 10-CA-013411

VS.

Division: M

CONSTANCE DANIELS ; BLOOMINGDALE HOA INC
**Defendant**

## ORDER GRANTING DEFENDANT'S MOTION TO ENFORCE LOAN MODIFICATION AGREEMENT

THIS CAUSE came before the Court on July 20, 2015 for an evidentiary hearing on Defendant Constance Daniels' Motion to Enforce Loan Modification Agreement, and the Court having heard testimony of the parties and their witnesses, argument of counsel, and being otherwise fully informed in the premises, finds as follows:

1. On March 23, 2015 a hearing was held by this Court on Defendant's Motion to Enforce Settlement Agreement or for Summary Judgment. On April 30, 2015 this Court entered an order denying Defendant's motion to enforce the settlement agreement based upon a factual dispute between the parties over whether an enforceable contract exists and, if so, whether there was a breach of said contract by Defendant's failure to make the payments required under the terms of the contract. At the March 23rd hearing, the parties agreed to a resolution of the issue by the Court at an evidentiary hearing to be held on July 20, 2015.

2. The Court finds, based upon the evidence presented, that the parties entered into an agreement for modification of the loan agreement, that payments were made by Defendant according to the terms of the modification agreement, and that Defendant is entitled to enforce the contract.

IT IS THEREFORE ORDERED AND ADJUDGED that Defendant's Motion to Enforce Loan Modification Agreement is GRANTED.

Done and Ordered in Hillsborough County, Florida this 27th day of December, 2015.

ELECTRONICALLY CONFORMED
12/27/2015

Sandra Taylor, Judge

Copies Furnished To:

**Plaintiff**
WELLS FARGO BANK, N.A
C/O CORPORATION SERVICE CO, R.A.
503 S PIERRE ST
PIERRE, SD 57501

Attorney: CHRISTOPHER CARROLL OBRIEN
485 N KELLER RD STE 401
MAITLAND, FL 32751

**Defendant**
Attorney: LINDA COURTNEY CLARK
LINDA C CLARK P A
12233 N FLORIDA AVE STE 201
TAMPA, FL 33612

CONSTANCE DANIELS
3927 DUNAIRE LN
VALRICO, FL 33596



EXHIBIT

COMPOSITE B

BLOOMINGDALE HOA INC
C/O GEORGE MAY IV, RA
3509 BELL SHOALS RD
VALRICO, FL 33596

Attorney: ALEXANDER REED ALLRED
13143 66TH ST
LARGO, FL 33773

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT IN AND FOR HILLSBOROUGH COUNTY, FLORIDA

WELLS FARGO BANK, N.A. ON BEHALF OF THE CERTIFICATEHOLDERS PARK PLACE SECURITIES, INC. ASSET-BACKED PASS-THROUGH CERTIFICATES SERIES 2005-WCW1,

CASE NO: 2010-CA-013411

    Plaintiff

v.

CONSTANCE DANIELS; ET. AL.,

    Defendant(s),
_____/

**ORDER ON DEFENDANT'S MOTION
FOR CLARIFICATION AND FOR SANCTIONS,
DEFENDANT'S MOTION FOR ATTORNEYS' FEES, AND
PLAINTIFF'S MOTION TO DEPOSIT FUNDS IN THE COURT REGISTRY**

THIS CAUSE having come before the Court on Defendant's Motion for Clarification and for Sanctions, Defendant's Motion for Attorneys' Fees, and Plaintiff's Motion to Deposit Funds in the Court Registry heard on March 28, 2016, and the Court being otherwise duly advised in the premises, it is hereby

ORDERED AND ADJUDGED:

1. Plaintiff, as a sanction, shall waive interest on the Loan Modification, enforced in this Court's Order dated December 27, 2015, from August 1, 2010 through December 27, 2015.

2. Plaintiff, as a sanction, will pay the Defendant's Attorneys' Fees in bringing the Motion to Enforce Loan Modification, filed on November 12, 2014, said amount to be determined at a later date.

3. The Defendant shall begin making payments pursuant to the Loan Modification Agreement on April 27, 2016, which will be for the May 1, 2016 payment. The Defendant's new payments will be calculated by Plaintiff pursuant to the interest rates set forth in the Loan Modification Agreement, which were scheduled to change each year. In addition, the interest

due from payments for the period of January 1, 2016 through April 1, 2016 will be added to the end of the Loan Modification Agreement as well as the principal and escrow payments for the period of August 1, 2010 through April 1, 2016.

4. The Court reserves as to Defendant's entitlement to Attorneys' Fees

5. The Defendant's Motion for Attorneys' Fees shall be reset by the Defendant at such time the Court determines appropriate.

DONE AND ORDERED in Hillsborough County, Florida this _____, 2016.

_____
Circuit Court

ORIGINAL SIGNED
APR 2 3 2016
SANDRA TAYLOR
SENIOR CIRCUIT JUDGE

Copies:

TERIS A BEST
PEARSON BITMAN, LLP
485 N. KELLER ROAD, SUITE 401
MAITLAND, FL 32751
TBEST@PEARSONBITMAN.COM
JNOVAIS@PEARSONBITMAN.COM
*Counsel for Plaintiff*

ALEX ALLRED
CASTLE LAW GROUP, P.A.
13143 66TH STREET NORTH
LARGO, FL 33773
BENHILLARDESQUIRE@GMAIL.COM
ESERVICECASTLE@GMAIL.COM
*Counsel for Defendant Constance Daniels*

COLLEEN M. DAVIS
ASSISTANT UNITED STATES ATTORNEY
400 NORTH TAMPA STREET, SUITE 3200
TAMPA, FL 33602
USAFLM.STATE.FORECLOSURES@USDOJ.GOV
*Counsel for Counsel for Defendant, USA-Department of Treasury*

# CASTLE LAW GROUP

Castle Law Group, P.A.

13143 66th Street North
Largo, Florida 33773
Telephone: (727) 536-8882
Facsimile: (727) 536-7739



October 2, 2017

Select Portfolio Servicing, Inc.　　　　　　　　　**Sent via Regular U.S. Mail**
P.O. Box 85250
Salt Lake City, UT 84165-0250

RE:　Borrower:　　　　Constance Daniels
　　　Account Number:　██████
　　　Property Address:　3927 Dunaire Drive, Valrico, FL 33596

To Whom It May Concern:

This office represents Ms. Constance Daniels with regards to the above-mentioned property address. Please allow this letter to serve as a written request for a line-by-line breakdown of the deferred balance. Per the Loan Modification Agreement, it does not provide for a deferred balance. Therefore, please provide a line-by-line breakdown and your basis for charging the same.

If you should have any questions, please feel free to contact our office.

Sincerely,
**Castle Law Group, P.A.**

Benjamin Hillard, Esquire

BH/tlg

cc: Client

EXHIBIT
COMPOSITE C

# CASTLE LAW GROUP
Castle Law Group, P.A.

13143 66th Street North
Largo, Florida 33773
Telephone: (727) 536-8882
Facsimile: (727) 536-7739



December 22, 2017

Select Portfolio Servicing, Inc.
P.O. Box 85250
Salt Lake City, UT 84165-0250

Select Portfolio Servicing, Inc.
3217 S. Decker Lake Dr.
Salt Lake City, UT 584165

<u>Sent via Fax: 801-801-8011
and Regular U.S. Mail</u>

RE:   Borrower:              **Constance Daniels**
      Account Number:        ▮▮▮▮▮▮▮▮▮▮
      Property Address:      **3927 Dunaire Drive, Valrico, FL 33596**

To Whom It May Concern:

    This office represents Ms. Constance Daniels with regard to the above-mentioned loan. We previously sent a demand letter dated October 2, 2017 requesting that you provide a line-by-line breakdown of the alleged deferred balance you are carrying on Ms. Daniel's mortgage statements.

    As you know, the loan modification does not include a deferred principal balance. A copy of the Loan Modification is attached hereto for your convenience. Therefore, I suggest you either remove the deferred balance from Ms. Daniels' mortgage statements and any demand thereto, or provide a line-by-line breakdown and supporting documentation. If you choose to maintain a demand for a deferred principal balance, and do not provide the line-by-line breakdown and supporting documentation, we shall assume that such deferred principal balance demand amount is without merit and we will file suit accordingly. If we have to file a lawsuit, we will seek attorneys fees based on your lack of providing a suitable response. Please conduct yourselves accordingly.

    If you should have any questions, please feel free to contact our office.

Sincerely,
Castle Law Group, P.A.

Benjamin Hillard, Esquire

cc: Client

RECORDING REQUESTED BY:
Countrywide Home Loans Servicing, LP
Attn: Home Retention Division
100 Beecham Drive
Pittsburgh, PA 15205

610  070471482  MOD  001  001

Doc ID #: 00070471482 MOD

———————SPACE ABOVE THIS LINE FOR RECORDER'S USE———————

# LOAN MODIFICATION AGREEMENT
## (Step Rate)

This Loan Modification Agreement ("Agreement"), made this 25th day of February, 2009, between CONSTANCE DANIELS (the "Borrower(s)") and Countrywide Home Loans Servicing LP (the "Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the 31st day of January, 2005 and recorded the 31st day of January, 2005, in the Official Records of County, in the State of FL, and (2) the Note and Adjustable Rate Rider and secured by, the Security Instrument, and (3) any prior agreements or modifications in effect relative to the Note and Security Instrument which covers the real property described in the Security Instrument and defined therein as the 'Property', located at 3927 DUNAIRE DRIVE, VALRICO, FL 33594, collectively the prior documents shall be referred to herein as the "Note and Security Instrument".

The real property described being set forth as follows:

SAME AS IN SAID SECURITY INSTRUMENT [SEE ATTACHED "EXHIBIT A"]

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note and Security Instrument):

1. **Amount of Borrower's Unpaid Principal Balance**

   As of the 1st day of April, 2009, the amount payable under the Note and Security Instrument (the "Unpaid Principal Balance") is U.S. $189,911.00, consisting of the amount(s) owed by the Borrower to the Lender and which may include, but are not limited to, any past due principal payments, interest, escrow payments, fees and/or costs ("Unpaid Amounts") which you have agreed shall be capitalized (added to the amount you originally borrowed) as one of the terms of this agreement. Any late/delinquency fees associated with overdue loan payments remaining unpaid as of the date immediately before this modification have been be waived and not included in this capitalization. The Borrower understands that capitalizing the Unpaid Amounts may result in the Borrower paying more interest over the life of the loan.

2. **Borrower's Promise to Pay**

   The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender. If on the 1st day of March, 2035 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

   The Borrower will make such payments at 7105 Corporate Drive, (PTX-B-36), Plano, TX 75024 or at such other place as the Lender may require.

3. **Amount of Borrower's Initial Scheduled Monthly Payments**

   As of the 1st day of May, 2009, the scheduled monthly payment will be in the amount of U.S. $813.25. The scheduled monthly payment may change on that day of every twelfth month thereafter as described in Section 4 of this Loan Modification Agreement. The Lender will notify the Borrower prior to the date of change in the scheduled monthly payment. During the Interest-Only period, the amount of the monthly payment also may change if the Borrower makes voluntary prepayments of principal.

   (A) **Monthly Payment Changes**
   Changes in the monthly payment will reflect changes in the unpaid principal and in the interest rate that the Borrower must pay. The Lender will determine the changed amount of the monthly payment in accordance with Section 5 of this Loan Modification Agreement.

4. **Interest Rates**

   As of the 1st day of April, 2009, the Borrower will pay interest at a yearly rate of 3.875%. Each date on which the interest rate changes is called a "Change Date." Thereafter, the interest rate that Borrower will pay and the dates when the interest rate will change are set forth below:


EXHIBIT "A"

Interest Rate Increases. The interest rate Borrower will pay will change as indicated below.

| Extended Interest Only Payment Period | | Principal and Interest Payment Period | |
|---|---|---|---|
| Change Date | Interest Rate | Change Date | Interest Rate |
| 04/01/2010 | 4.125% | 04/01/2019 | 6.625% |
| 04/01/2011 | 4.375% | 04/01/2020 | 6.99% |
| 04/01/2012 | 4.625% | 04/01/2021 | 6.99% |
| 04/01/2013 | 4.875% | 04/01/2022 | 6.99% |
| 04/01/2014 | 5.125% | 04/01/2023 | 6.99% |
| 04/01/2015 | 5.5% | 04/01/2024 | 6.99% |
| 04/01/2016 | 5.875% | 04/01/2025 | 6.99% |
| 04/01/2017 | 6.25% | 04/01/2026 | 6.99% |
| 04/01/2018 | 6.625% | 04/01/2027 | 6.99% |
| | | 04/01/2028 | 6.99% |

After the last Change Date, the interest rate shall remain the same until such time as the principal and interest due under the Note are paid in full.

5. Monthly Payment Changes

(A) Change Dates
Each date on which the interest rate changes is called a "Change Date."

(B) Interest-Only Payments
The first ten years following the execution of this Loan Modification Agreement are known as the "Interest-Only Period." On the first Change Date and continuing through the 11th Change Date (to the extent Section 4 provides for 11 or more rate changes), the amount of the new scheduled monthly payments will be determined by dividing the new interest rate by 12 and multiplying the result by the then unpaid principal. If the Borrower makes a voluntary prepayment of principal during the Interest-Only Period, the next monthly payment will be less. The lower monthly payment amount will be determined by dividing the new interest rate by 12 and multiplying it by the then unpaid principal. If the Borrower makes a voluntary prepayment of principal after the due date of a scheduled monthly payment, the prepayment amount will be credited immediately, but the reduction in the amount of the monthly payment may not be reflected on the billing statement until the following month.

(C) Principal and Interest Payments
On April 1, 2019 and on every Change Date thereafter, the Lender will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that the Borrower is expected to owe at the Change Date in full on the Maturity Date at the new interest rate in substantially equal payments. The result of this calculation will be the amount of the new scheduled monthly payment.

6. Impact of this Agreement on the New Interest-Only Monthly Payments and on the Amount of Interest Borrower Will Pay Over the Life of the Loan

The Borrower understands that by agreeing to add the unpaid past-due payments, including unpaid and deferred interest, fees, and other costs (collectively 'Unpaid Amounts') to the Unpaid Principal Balance, the added Unpaid Amounts accrue interest based on the interest rate in effect. The Borrower also understands that this means interest will now accrue on the unpaid interest, and that this would not happen without this Agreement.

The Borrower understands the result of this Agreement is to increase the amount of interest that will be owed over the term of the loan. This is because the amount of principal is higher and the interest due is recalculated because it is charged on that higher principal amount.

7. Impact of this Agreement on Monthly Payments at the End of the Interest-Only Period – the First Principal and Interest Payment Due Date:

After the Interest-Only Period ends, the Borrower understands the monthly payment will increase—even if the Borrower's interest rate stays the same—because the Borrower must start repaying the principal, as well as the interest, for the remainder of the loan term. Because this Agreement results in the Unpaid Amounts being added to principal, the amount of principal that is due with each monthly payment will also increase, which results in a bigger monthly payment. The Borrower also understands the need to plan for this increase in the amount of the monthly payment when the Interest-Only Period ends and that at that time the Borrower will no longer have the choice of paying only the Interest-Only monthly amount. The Borrower understands that the increase in the monthly payment amount at the First Principal and Interest Payment Due Date could be significant and result in a condition referred to as payment shock.

8. Understanding the Monthly Statement During the Interest-Only Period

The Borrower understands that the Interest-Only Loan Monthly Statement during the Interest-Only Period will offer the Borrower more payment options than just the Interest-Only Payment. Although the Borrower's Interest-Only loan offers the freedom to pay only the interest portion of the payment due each month for a specified period of time, the Borrower also understands he or she has the choice to pay additional amounts, which will assist the Borrower in paying down the principal balance. If the Borrower chooses to pay extra money beyond the Interest-Only payment amount in a given month, the Borrower understands this will reduce the principal owed. The next month, the Interest-Only payment amount the Borrower owes (assuming there has been no change in the interest rate on the Borrower's loan) will be lower. This is because the amount of principal is lower and the interest due is recalculated because it is charged on that lower principal amount. The Borrower understands that paying more and reducing principal can also mean that the Borrower will build equity in the home more quickly. The Borrower understands that the Amortized Payment Choice and 15-Year Amortized Payment Choice shown on the Interest-Only monthly statement provide the Borrower with easy ways each month to select a payment that reduces the Borrower's principal. The Borrower may, however, pay any amount above the Interest-Only Payment amount.

9. Effective of This Modification Agreement

Nothing in this agreement shall be understood or construed to be a refinance, satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security

Instrument will remain unchanged, and the Borrower and the Lender will be bound by, and comply with, all terms and provisions thereof, as amended by this Agreement.

10. Borrowers Agreement to Assist With Lost, Misplaced, Misstated, Inaccurate or Missing Documents

In consideration of this Modification, the Borrower agrees that if any document related to the Note and Security Instrument and/or Modification is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, the Borrower will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced the Lender hereby indemnifies the Borrower(s) against any loss associated with a demand on the original note. All documents the Lender requests of the Borrower shall be referred to as "Documents." The Borrower agrees to deliver the Documents within ten (10) days after receipt by the Borrower of a written request for such replacement.

As evidenced by their signatures below, the Borrower and the Lender agree to the foregoing.

_Constance Daniels_  Dated: 3/19/09
CONSTANCE DANIELS

STATE OF __FLORIDA__

COUNTY OF __HILLSBOROUGH__

On __MARCH 19, 2009__ before me, __DENNIS JAYAG__ Notary Public, personally appeared __CONSTANCE DANIELS  FLDL D542-100-67-719-0__
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within Instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures (s) on the Instrument the person(s), or entity upon behalf of which the person(s) acted, executed the Instrument.

WITNESS my hand and official seal.

DENNIS JAYAG
Comm.# DD0554522
Expires 5/21/2010
Florida Notary Assn. Inc

Signature

---

Countrywide Home Loans Servicing LP

By: _____  Dated: _____

STATE OF _____

COUNTY OF _____

On _____ before me, _____ Notary Public, personally appeared _____
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within Instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures (s) on the Instrument the person(s), or entity upon behalf of which the person(s) acted, executed the Instrument.

WITNESS my hand and official seal.

_____
Signature