UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CONSTANCE DANIELS,

     Plaintiff,

v.

                                        CASE NO. 8:18-CV-1652-T-30CPT

SELECT PORTFOLIO SERVICING, INC.,

     Defendant.

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (DOC. 2) AND INCORPORATED MEMORANDUM OF LAW**

Defendant, SELECT PORTFOLIO SERVICING, INC. (the "**Defendant**" or "**SPS**"), pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, moves to dismiss the Complaint (Doc. 2) (the "**Complaint**"), and says:

1.     The Complaint alleges that SPS improperly informed the Plaintiff, Constance Daniels ("**Plaintiff**"), of a deferred balance on Plaintiff's residential mortgage loan that allegedly is not authorized by a Loan Modification Agreement that Plaintiff entered into in 2009, which is attached as Exhibit A to the Complaint. The Complaint also attaches two court orders entered in 2015 and 2016 in a prior foreclosure case against Plaintiff involving the same loan, which are attached as Composite Exhibit B.

2.     The Complaint purports to allege three causes of action against SPS: breach of contract (Count I); violation of Florida's civil Racketeer Influenced and Corrupt Organizations ("**RICO**") Act (Count II); and violation of Florida's Deceptive and Unfair Trade Practices Act ("**FDUTPA**") (Count III).

3.     Count I for breach of contract must be dismissed because SPS is not a party to the Loan Modification Agreement, or any other agreement with Plaintiff. In addition, Count I fails

1

because the creation of the deferred balance at issue was explicitly mandated by the 2016 court order attached to Plaintiff's Complaint.

4.   Count II must be dismissed because the Complaint does not allege any of the elements of a RICO claim, including a cognizable RICO enterprise, a pattern of racketeering activity, and a RICO injury. As a result, Defendant should be awarded attorney's fees and costs for having to defend against this RICO claim, pursuant to Fla. Stat. § 772.104(3).

5.   Similarly, Count III must be dismissed because the Complaint does not allege any of the elements of FDUTPA claim, including a deceptive act or unfair practice, causation, and actual damages. Accordingly, Defendant should be awarded its attorney's fees and costs for prevailing against this FDUTPA claim, pursuant to Fla. Stat. § 501.2105(1).

6.   As such, this Court should dismiss Plaintiff's Complaint in its entirety and award Plaintiff its attorney's fees and costs.

**WHEREFORE**, Defendant, SELECT PORTFOLIO SERVICING, INC., respectfully requests that this Honorable Court dismiss the Complaint in its entirety for failure to state a claim, with prejudice, award Defendant its attorney's fees and costs, and grant such further relief as is appropriate.

<u>**MEMORANDUM OF LAW**</u>

**I.  BACKGROUND**

The Complaint alleges that Plaintiff entered into a Loan Modification Agreement with <u>Wells Fargo</u> in 2009, which is attached to the Complaint as Exhibit A. (Compl. ¶ 19 & Ex. A).[1]

---

[1] The Loan Modification Agreement states that the Agreement was between Plaintiff and Countrywide Home Loans Servicing LP, rather than Wells Fargo. (Compl. Ex. A). Similarly, the Agreement contains an unexecuted signature block for Countrywide Home Loans Servicing LP. Regardless, the Loan Modification Agreement makes no reference to the Defendant, SPS.

The Complaint also alleges that the court in a prior foreclosure action brought by Wells Fargo Bank, N.A.—defined in the Complaint as the "Foreclosure Case"—entered two orders enforcing and modifying the terms of the Loan Modification Agreement, which are attached to the Complaint as Exhibit B.  (Id. ¶ 9 & Ex. B).  Specifically, the court in the Foreclosure Case ordered that "the interest due from payments for the period of January 1, 2016 through April 1, 2016 will be added to the end of the Loan Modification Agreement as well as the principal and escrow payments for the period of August 1, 2010 through April 1, 2016" (the "**Deferred Payments**").  (Id. Ex. B) (emphasis added).[2]  Despite this court order, the Complaint appears to take issue with the existence of these Deferred Payments, alleging that "[t]he Loan Modification Contract does not provide for a deferred balance," and that "SPS breached the Loan Modification Contract by demanding a deferred balance where the Loan Modification does not provide for one."  (Id. ¶¶ 11, 23).

The Complaint does not allege (i) that Plaintiff has paid any portion of the Deferred Payments, (ii) that the amount of the Deferred Payments has been miscalculated, or (iii) that the court in the Foreclosure Case erred in ordering Plaintiff to pay the Deferred Payments (which orders Plaintiff did not appeal).  The Complaint does allege that Defendant "has not substantiated" the amount of the Deferred Payments in response to Plaintiff's requests—which are attached to the Complaint as Exhibit C—but Defendant's alleged failure to respond to such requests does not form the basis for any of Plaintiff's claims against Defendant.

As stated above, SPS—the only defendant in this action—was not a party to the Loan Modification Agreement or the Foreclosure Case.  (Id. Ex. A & ¶ 7).  Instead, the Complaint alleges that "SPS is the loan servicer for the Plaintiff in Daniels' Foreclosure Case," and further

---

[2] The Maturity Date for the loan—i.e., when the Deferred Payments will become due—is March 1, 2035.  (Compl. Ex. A at ¶ 2).

alleges that "SPS continues to demand a deferred balance of more than $80,000 on its monthly mortgage statements." (Id. ¶¶ 10, 21).

Based on these barebones allegations, the Complaint purports to bring three causes of action against SPS: breach of contract (Count I); violation of Florida's RICO statute (Count II); and violation of FDUTPA (Count III). Each of these counts attempts to parrot the elements of those respective causes of action in conclusory terms. Count I alleges that Plaintiff entered into a contract with Wells Fargo, rather than SPS, but nevertheless alleges that SPS somehow breached the Loan Modification Agreement by notifying Plaintiff of the amount of the Deferred Payments, and alleges that SPS is directly liable to Plaintiff for the full amount of the Deferred Payments. (Id. ¶¶ 17-24). Count II claims that "SPS engaged in a pattern of predicate acts constituting racketeering activity" by notifying Plaintiff of the amount of the Deferred Payments, but fails to allege any of the elements of a RICO claim or any facts in support of such claim. (Id. ¶¶ 26-34). Similarly, Count III asserts that "SPS engaged in unfair and deceptive trade practices" under FDUTPA by notifying Plaintiff of the amount of the Deferred Payments—again, without alleging any of the elements of a FDUTPA claim or any facts in support of such claim. (Id. ¶¶ 36-41). Each of Plaintiff's claims seek damages and attorney's fees and costs, and Plaintiff's RICO claim also seeks treble damages. (Id. ¶ 34). Plaintiff also demands a jury trial. (Id. p. 6).

## II.    STANDARD OF LAW

To survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 129 S. Ct. at 1949. This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Wilchombe v. Tee Vee Toons, Inc., 555 F.3d 949, 958 (11th Cir. 2009) (citing Twombly, 550 U.S. at 555). Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . ." Twombly, 550 U.S. at 555.

## III.    ARGUMENT

### A.    The Claim for Breach of Contract (Count I) Must Be Dismissed Because There Is No Contract Between the Parties and No Alleged Breach.

SPS cannot be liable to Plaintiff for any alleged breach of the Loan Modification Agreement because SPS is not a party to that Agreement. See, e.g., Whetstone Candy Co. v. Kraft Foods, Inc., 351 F.3d 1067, 1073 (11th Cir. 2003) ("Generally, a contract does not bind one who is not a party to the contract, or who has not in some manner agreed to accept its terms. Corporations are separate legal entities and contracts made by a parent corporation do not bind a subsidiary merely because one corporation owns all of the stock of the other corporation."); In re Univ. Ctr. Hotel, Inc., 323 B.R. 306, 309 (Bankr. N.D. Fla. 2005) ("'A contract cannot bind one who is not a party thereto,' because in order to create an enforceable contract, there must be 'reciprocal assent to a certain and definite proposition.' Regency did not sign the Contract in any capacity and is therefore clearly not a party to it.") (citations omitted).  For example, the Eleventh Circuit in Whetstone explained in detail how a subsidiary manufacturer and seller of food products could not be bound by a settlement agreement between its parent company and the plaintiff because the subsidiary was not a party to that agreement. 351 F.3d at 1070-735 ("The agreement, according to its terms, was between Kraft NA and Whetstone. Absent facts that would allow us to disregard Kraft UK's status as a separate entity, Kraft NA ... has no ability to bind Kraft UK, a separate entity, without Kraft UK's permission.").

The same is true here. The Loan Modification Agreement is clear on its face that SPS is not a party to the Agreement. Plaintiff does not allege any facts that would establish that SPS was a party to the Loan Modification Agreement. Even assuming SPS later became an agent of Wells Fargo, that would not make SPS a party to the Loan Modification Agreement. Indeed, even if SPS had been servicing the loan at issue in 2009 and had signed the contract on behalf of Wells Fargo—which is not alleged—then SPS still would not be a party to that contract or individually liable under it. See, e.g., Delta Air Lines, Inc. v. Wilson, 210 So. 2d 761 (Fla. 3d DCA 1968).

In addition, even assuming arguendo SPS were somehow a party to the Loan Modification Agreement—which it was not—the Complaint still fails to allege any breach of that Agreement. Instead, the Complaint merely alleges that the "Loan Modification Contract does not provide for a deferred balance." (Compl. ¶ 21). However, the fact that a deferred balance now exists does not establish that the Loan Modification Agreement was somehow "breached" by any of the parties to the Agreement. The deferred balance was created in 2016 pursuant to the court order attached to the Complaint which ordered that the unpaid amounts needed to "be added to the end of the Loan Modification Agreement," i.e., deferred until March 1, 2035. (Compl. Ex. B). Presumably Plaintiff is claiming that Wells Fargo breached the 2009 Loan Modification Agreement in 2016 by complying with the 2016 court order. However, such argument is nonsensical because the 2016 order explicitly referenced and modified the terms of the loan, including the 2009 Loan Modification Agreement. Therefore, Wells Fargo's compliance with the 2016 court order cannot constitute a breach of the loan documents, unless Plaintiff is claiming that the court order is somehow invalid, which Plaintiff does not allege.

Therefore, Plaintiff's claim against SPS for breach of contract must be dismissed.

**B.** **The RICO Claim (Count II) Must Be Dismissed Because the Complaint Fails to Allege Any Elements of a RICO Claim.**

Plaintiff fails to allege any elements of a RICO claim. The elements of a RICO violation are "(1) conduct or participation in an enterprise; through (2) a pattern of racketeering activity." Lugo v. State, 845 So. 2d 74, 97 (Fla. 2003). Proof of the "enterprise" element requires proof of "the following subelements: (1) an ongoing organization, formal or informal, with a common purpose of engaging in a course of conduct, which (2) functions as a continuing unit." Id.[3]

The Complaint does not allege any of these elements, but instead constitutes a generic attempt to manufacture a RICO claim out of a routine accounting dispute involving a residential mortgage loan, which clearly is insufficient. See, e.g., Pieter Bakker Mgmt., Inc. v. First Fed. Sav. & Loan Ass'n, 541 So. 2d 1334, 1336 (Fla. 3d DCA 1989) (affirming dismissal of RICO claims filed by borrower in foreclosure action because "conclusory allegations of criminal conduct fail to state a cause of action under civil theft statute"); Hill v. Nationstar Mortgage, LLC, Case no. 1560106-CIV, 2015 WL 4478061 (S.D. Fla. July 6, 2015) (dismissing borrower's RICO claims, based on charging allegedly inflated property inspection fees, and explaining that the "RICO causes of action have multiple defects, including that Plaintiffs have failed to sufficiently plead facts to establish a cognizable enterprise, a pattern of racketeering activity, and RICO injury"); In re Mouttet, 493 B.R. 640, 661 (Bankr. S.D. Fla. 2013) (dismissing RICO claims for failure to

---

[3] "The Florida RICO statute was largely modeled after the Federal RICO Statute. The 'enterprise' and 'pattern of racketeering activity' elements of RICO are almost identical to the Federal RICO provisions. Specifically, section 895.03(3), Florida Statutes (1993), makes it 'unlawful for any person employed by, associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt.'" Gross v. State, 765 So. 2d 39 (Fla. 2000); State v. Lucas, 600 So.2d 1093 (Fla. 1992) ("[T]he Florida RICO Act was derived from the Federal RICO Act"); Bortell v. White Mountains Ins. Grp., Ltd., 2 So. 3d 1041, 1047 (Fla. 4th DCA 2009) ("Because the Florida RICO Act is patterned after the federal act, Florida looks to federal authorities in construing its own RICO statute.").

adequately plead pattern of racketeering activity, existence of requisite enterprise, or qualifying predicate acts: "First, as preliminarily addressed above, when stripped down to the core, this Complaint is about three transactions—two loans and one potential equity participation associated with a loan—in which the obligations to the lender have not been fulfilled. The RICO statutes are not designed as a vehicle to resolve general commercial disputes. Indeed, this is the reason one of the requirements of a RICO claim is to demonstrate a pattern of racketeering activity.").

The Complaint fails to allege a cognizable RICO enterprise. Rather than alleging an organized alliance of parties that have come together in a meaningful way to engage in criminal conduct, Defendant appears to posit an "enterprise" that consists only of SPS, acting alone, for the sole benefit of SPS, which obviously falls far short of satisfying RICO's "enterprise" element. See, e.g., Paradise Hotel Corp. v. Bank of Nova Scotia, 842 F.2d 47, 53 (3d Cir. 1988) (holding that a defendant bank cannot qualify as "an enterprise" under RICO because "A single entity cannot be both defendant and the enterprise for purposes of [RICO]"). Indeed, even a company and its affiliates, including its parent and subsidiaries operating under common control, cannot qualify as an "enterprise" under RICO because the affiliated entities fail RICO's distinctiveness requirement. See Fogie v. THORN Americas, Inc., 190 F.3d 889, 896 (8th Cir. 1999); see also VanDenBroeck v. CommonPoint Mortg. Co., 210 F.3d 696, 700 (6th Cir. 2000) (holding, in action against defendant mortgage companies, that "the enterprise alleged to exist in this case is too unstable and fluid an entity to constitute a RICO enterprise"); Hill v. Nationstar Mortgage, LLC, Case no. 1560106-CIV, 2015 WL 4478061 (S.D. Fla. July 6, 2015) (rejecting claim that loan servicer and its affiliates and third party vendors could constitute an enterprise under RICO, based on allegations that they were working together to unlawfully extort property inspection fees from borrowers). Even under a "hub and spoke" conspiracy—presumably with SPS as the hub—there

must not only be discrete spokes but also some sort of "rim" linking the different parties, so that the "illegal enterprise" is sufficiently united. United States v. Chandler, 388 F.3d 796, 808 (11th Cir. 2004).

Remarkably, the Complaint not only fails to allege the existence of an enterprise, but actually affirmatively alleges that SPS did not participate in an enterprise with any other parties. The only relevant allegation in the Complaint is that "SPS participated in said pattern of racketeering activity in order to use the income derived from DANIELS in the establishment or operation of its own enterprise, separate and apart from Wells Fargo." (Compl. ¶ 32). In other words, Plaintiff does not allege that any parties (other than Defendant itself) might be involved in such an enterprise, or identify any enterprise distinct from Defendant itself. Instead, Plaintiff suggests that the enterprise consists of Defendant acting alone, for the sole benefit of Defendant. That is obviously insufficient to qualify as an enterprise under RICO, which is intended "to address the problem of organized crime." Hagopian v. Justice Admin. Comm'n, 18 So. 3d 625, 640 (Fla. 2d DCA 2009). Because Plaintiff fails to adequately allege the existence of an enterprise under RICO, the Complaint must be dismissed.

Similarly, the Complaint fails to allege a pattern of racketeering activity consisting of at least two related, qualifying predicate acts. In fact, the Complaint does not allege any predicate acts whatsoever, but instead makes a vague reference to Chapter 817, Florida Statutes, which specifies dozens of inapplicable crimes. The conduct at issue—mailing monthly mortgage statements informing Plaintiff of the court-ordered Deferred Payments, which Plaintiff appears to dispute—obviously does not constitute a pattern of racketeering activity. Furthermore, the Complaint does not allege any facts evidencing the conclusory assertion that the Deferred Payments are somehow improper, or even that the amount is inaccurate. Certainly, the Complaint

fails to allege fraud with particularity, as the law requires. Fed. R. Civ. P. 9(b). Instead, Plaintiff merely alleges, in conclusory terms, that the monthly mortgage statements reflect amounts that are "more than what is actually owed," and also that SPS has not responded to Plaintiff's requests for "a line-by-line breakdown of the deferred balance." (Compl. ¶¶ 11-12, 29). Of course, these do not constitute qualifying predicate acts that would establish a pattern of racketeering activity. Therefore Plaintiff's RICO claim fails as a matter of law.

Finally, the Complaint also fails to allege that Plaintiff suffered a RICO injury. In fact, the Complaint does not even seek any relief authorized by RICO, such as forfeiture of real property. See Fla. Stat. §§ 895.05, 895.09. Nor does the Complaint allege that Plaintiff has paid any portion of the Deferred Payments, which will not become due until March 1, 2035. (Compl. Ex. B; Ex. A at ¶ 2). Accordingly, Defendant has failed to allege any RICO injury.

Because the Complaint fails to allege each and every element of a RICO claim—and indeed, it alleges none of the elements of a RICO claim—Count II must be dismissed. In addition, SPS should be awarded attorney's fees for having to defend against these RICO claims, pursuant to Fla. Stat. § 772.104(3), which mandates that courts award attorney's fees to parties who defeat RICO claims that lack "substantial fact or legal support," which "is less stringent than the standard for awarding attorneys' fees under other Florida statutory provisions, such as chapter 57.105." Johnson Enterprises of Jacksonville, Inc. v. FPL Grp., Inc., 162 F.3d 1290, 1330–31 (11th Cir. 1998); see Fid. Warranty Servs., Inc. v. Firstate Ins. Holdings, Inc., 98 So. 3d 672, 677 (Fla. 3d DCA 2012). Plaintiff's RICO claims clearly lack substantial fact or legal support, and therefore an award of attorney's fees against Plaintiff is required.

**C.** **The FDUTPA Claim (Count III) Must Be Dismissed Because the Complaint Fails to Allege Any Elements of a FDUTPA Claim.**

Plaintiff's FDUTPA claim must be dismissed because Plaintiff fails to allege any of the required elements of a FDUTPA claim. "[A] consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. 2d DCA 2006).

First, Plaintiff fails to adequately allege a deceptive act or unfair practice by SPS. "Deception occurs 'if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment. This standard requires a showing of probable, not possible, deception that is likely to cause injury to a reasonable relying consumer." Silver v. Countrywide Home Loans, Inc., 483 F. App'x 568, 571 (11th Cir. 2012) (citations omitted) (affirming dismissal of FDUTPA claim against Countrywide for failure to refinance mortgage and misleading borrower about modification). "An unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Rollins, 951 So. 2d at 869 (citations and quotation marks omitted); see Washington v. LaSalle Bank Nat. Ass'n, 817 F. Supp. 2d 1345, 1350 (S.D. Fla. 2011) (same; dismissing FDUTPA claim against lender).

The Complaint falls far short of alleging that SPS engaged in a deceptive act or an unfair practice under FDUTPA. The only allegation in Count III that is remotely factual in nature is that SPS "demand[ed] a deferred loan balance on its monthly mortgage statements to DANIELS where it knew or should have known that the Loan Modification Contract does not provide for a deferred balance and that SPS is not entitled to those funds." (Compl. ¶ 39). Again, this allegation misses the point, as it was the 2016 court order—not the 2009 Loan Modification Agreement—that mandated the creation of the Deferred Payments in 2016. The fact that the Loan Modification

Agreement allegedly did not "provide for a deferred balance" is entirely beside the point and irrelevant to whether the deferred balance is proper. Put differently, it would be extremely unusual for any loan documents to mandate that future unpaid amounts be deferred until the maturity date. The 2016 court order, however, is beyond clear that the unpaid amounts needed to "be added to the end of the Loan Modification Agreement," i.e., deferred until March 1, 2035. (Compl. Ex. B). Plaintiff has alleged absolutely nothing that is deceptive or unfair about notifying Plaintiff in 2016 of the amount of those Deferred Payments in each monthly mortgage statement. Plaintiff does not allege that she was misled whatsoever by the Deferred Payments or the order mandating such payments to be deferred, which Plaintiff sought and obtained in the Foreclosure Case. See Washington, 817 F. Supp. 2d at 1350. Other than attaching the conclusory terms of "deceptive and unfair" to the court-ordered Deferred Payments, the Complaint does not allege any facts establishing that the creation of the Deferred Payments was actually deceptive or unfair. Furthermore, SPS is only a loan servicer—it was not a party to the Loan Modification Agreement or the Foreclosure Case—so the fact that the Deferred Payments exist could not, as a matter of law, constitute a deceptive act or unfair practice by SPS. Therefore, the allegations in the Complaint are insufficient to establish that SPS committed a deceptive act or unfair practice under FDUTPA.

The FDUTPA claim must also be dismissed because Plaintiff does not allege causation. As discussed above, the Deferred Payments were ordered by the court in 2016 in the Foreclosure Case, and SPS was not even a party to that case. In addition, the order requiring the Deferred Payments was sought and obtained by Plaintiff (and of course it would have been Plaintiff, and not Wells Fargo, who would have wanted those unpaid amounts to be deferred interest-free until 2035 rather than immediately due and owing). In reality, the cause of the unpaid Deferred

Payments was Plaintiff's failure to pay the principal, interest and escrow amounts that comprise the Deferred Payments, together with Plaintiff's successful motion to defer those unpaid amounts interest-free until 2035. Therefore the Complaint fails to allege that SPS caused the Deferred Payments merely by notifying Plaintiff of their existence on the monthly mortgage statements.

Finally, the Complaint fails to allege actual damages. Only "actual damages" are permitted under FDUTPA. Rollins, 951 So. 2d at 869. Plaintiff does not allege that she has incurred any actual damages because she has not paid any portion of the Deferred Payments, which will not become due until March 1, 2035. (Compl. Ex. B; Ex. A at ¶ 2). Nor does Plaintiff allege that she made the outstanding principal, interest and escrow payments that comprise the deferred balance. Moreover, Plaintiff does not allege that SPS received any such payments. Put differently, it would be patently unfair and improper for SPS to pay to Plaintiff any portion of the Deferred Payments because Plaintiff has not paid any of those amounts, none of those amounts have become due, and SPS has not received any of those amounts, meaning that any such recovery in this case against SPS would be a complete windfall to Plaintiff, particularly given her allegation that she does not even owe such amounts (to SPS or anyone else). See Coursen v. Shapiro & Fishman, GP, 588 F. App'x 882, 886 (11th Cir. 2014) (affirming dismissal of FDUTPA claim where plaintiff "cannot establish a causal link between her damages and Defendants' alleged conduct" despite "losing her home" in foreclosure). Thus, Plaintiff has not alleged actual damages as required by FDUTPA.

Therefore, Count III of the Complaint for violation of FDUTPA must be dismissed because the Complaint fails to adequately allege each of the elements under FDUTPA. Accordingly, the Court must award SPS its reasonable attorneys' fees and costs pursuant to Section 501.2105(1). See, e.g., M.G.B. Homes, Inc. v. Ameron Homes, Inc., 30 F.3d 113, 115 (11th Cir. 1994).

## <u>CONCLUSION</u>

Plaintiff's Complaint must be dismissed in its entirety because each of the counts fails to state a cause of action. Plaintiff's claim for breach of contract against SPS must be dismissed because there is no contract between the parties. Nor would the existence of the deferred balance at issue constitute a "breach" of the loan documents, including the Loan Modification Agreement, because it is beyond clear that the deferred balance was created pursuant to subsequent court order rather than any agreement between the parties. Plaintiff's claims for violation of RICO and FDUTPA fail because none of the elements are adequately pled. The Complaint fails to allege that SPS engaged in a cognizable RICO enterprise, committed a pattern of racketeering activity, and that Plaintiff suffered a RICO injury. Similarly, the Complaint fails to allege that SPS committed a deceptive act or unfair trade practice under FDUTPA, and also fails to allege causation and actual damages. As such, the Complaint must be dismissed and Defendant must be awarded its attorney's fees and costs, including without limitation pursuant to Fla. Stat. §§ 501.2105(1) and 772.104(3).

QUARLES & BRADY LLP

By: /s/ *Joseph T. Kohn*
    Benjamin B. Brown
    Florida Bar No. 13290
    Joseph T. Kohn
    Florida Bar No. 113869
    1395 Panther Lane, Suite 300
    Naples, FL  34109
    239/659-5026 Telephone
    239/213-5426 Facsimile
    benjamin.brown@quarles.com
    joseph.kohn@quarles.com
    debra.topping@quarles.com
    kerlyne.luc@quarles.com
    DocketFL@quarles.com
    *Counsel for Defendant Select Portfolio Servicing, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was filed on August 6, 2018, using the CM/ECF

Portal system and that a true and correct copy of the foregoing was served on the following parties:

Amy E. Cuykendall, Esq.
Benjamin Hillard, Esq.
Alexander R. Allred, Esq.
Castle Law Group, P.A.
13143 66th Street North
Largo, FL 33733
eservicecastle@gmail.com

/s/ *Joseph T. Kohn*
Joseph T. Kohn