UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CONSTANCE DANIELS,**

    **Plaintiff,**

v.   CASE NO.: 8:18-cv-01652-JSM-CPT

**SELECT PORTFOLIO**   **DEMAND FOR JURY TRIAL**
**SERVICING, INC.,**

    **Defendant.**

_____/

### PLAINTIFF'S SEDCOND AMENDED
### COMPLAINT WITH INJUNCTIVE RELIEF SOUGHT

**COMES NOW**, Plaintiff, **CONSTANCE DANIELS** ("Ms. Daniels" or "Plaintiff"), by and through the undersigned counsel, and hereby files this Second Amended Complaint pursuant to Federal Rules of Civil Procedure Rule 15(a)(2) and the Court's Order entered October 5, 2018 (Doc. No. 22) against Defendant, **SELECT PORTFOLIO SERVICING, INC.** ("Defendant"), and in support thereof states as follows:

*Introduction*

1. This action arises out of an alleged "Debt" or "Consumer Debt" as defined by Fla. Stat. § 559.55 (6) and Defendant's willful violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* ("FDCPA"), and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72 *e.t seq.* ("FCCPA"), by improperly servicing Ms. Daniels' mortgage loan in reckless disregard for Ms. Daniels' consumer rights when (a.) adding $83,259.92 to Ms. Daniels' deferred principal balance on her mortgage against the plain language of a foreclosure court order requiring Defendant add only $60,808.83 to Ms.

Daniels' deferred principal balance on her mortgage and continuously attempting to collect on such illegitimate balance; (b.) demanding that Ms. Daniels owe an outstanding principal balance of $356,121.53, including an interest-bearing principal balance of $272,861.61, in November of 2016 when such amount directly contradicted the mortgage modification contract enforced by the foreclosure court when it denied foreclosure; and (c.) demanding that Ms. Daniels pay an "interest" payment of $1,335.88 in November of 2016 against the plain language of the foreclosure court order stating that Ms. Daniels' interest payment should have been $928.25 in November of 2016. All of Defendant's improper mortgage servicing actions identified herein can reasonably be expected to harass Ms. Daniels in violation of the FDCPA and FCCPA.

## *Jurisdiction and Venue*

2. This Court has subject matter jurisdiction over the instant case under 28 U.S.C. §1331 as there exists federal question jurisdiction under the FDCPA.

3. Jurisdiction of this Court also arises under 15 U.S.C. § 1692k (d) and Fla. Stat. § 559.77 (1).

4. Venue lies in this District pursuant to 28 U.S.C. § 1391 (d), as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## *Parties*

5. Plaintiff, Constance Daniels, was and is a natural person, and at all times material hereto, is an adult, a resident of Hillsborough County, Florida, a "Consumer" as defined by 15 U.S.C. § 1692a (3), and a "debtor" or "consumer" as defined by Fla. Stat. § 559.55 (8).

6. At all times material hereto, Defendant was and is a corporation with its principal place of business in the state of Utah and its registered agent, CORPORATION SERVICE COMPANY, located at 1201 Hays Street, Tallahassee, FL 32301.

7. At all times material hereto, Defendant was and is a "Consumer Collection Agency" as defined by Fla. Stat. § 559.55 (3) and/or a "Debt Collector" as defined by Fla. Stat. § 559.55 (7) and 15 U.S.C.§ 1692a (6).

### *Statements of Fact*

8. On January 31, 2005, Ms. Daniels executed and delivered a note and mortgage (collectively "Mortgage") in favor of Countrywide Home Loans Servicing LP ("Lender") secured by Ms. Daniels' home, which is located at 3927 Dunaire Drive, Valrico, FL 33594 ("Property").

9. Ms. Daniels thereafter encountered financial difficulties and fell behind on her monthly installment payments to the Lender, defaulting on the Mortgage.

10. On March 19, 2009, Ms. Daniels entered into a Mortgage modification agreement ("Loan Modification Contract") with the Lender. *See* **Exhibit A.**

11. The Loan Modification Contract required that Ms. Daniels remit monthly installment payments of $813.25 to the Lender during the first year. *See* **Exhibit A, ¶ 3.**

12. The Loan Modification Contract also required that Ms. Daniels' principal balance remain at $189,911.00 for the first ten years of the Loan Modification Contract, through March of 2019. *See* **Exhibit A, ¶¶ 1, 5.**

13. For over a year, Ms. Daniels successfully paid each monthly installment payment as required by the Loan Modification Contract without issue or delay.

14. Sometime thereafter, however, the Mortgage was sold, transferred, or assigned to Wells Fargo Bank, N.A. ("Wells Fargo").

15. On or around June 24, 2010, Wells Fargo refused to accept Ms. Daniels' monthly installment payment towards the Mortgage.

16. Under information and belief, Defendant was assigned the mortgage servicing rights after the Mortgage allegedly fell into default status after June 24, 2010.

17. Wells Fargo thereafter continued to refuse to accept Ms. Daniels' monthly installment payments, which caused an alleged default of the Mortgage.

18. As a result of Wells Fargo's refusal to accept Ms. Daniels' monthly installment payments towards the Mortgage, Wells Fargo brought a foreclosure action against Ms. Daniels; see Hillsborough County Case No. 2010-CA-13411 ("Foreclosure Case").

19. At all times relevant hereto, Defendant was and is the Mortgage servicer in the Foreclosure Case.

20. In the Foreclosure Case, Ms. Daniels moved to enforce the terms of the Loan Modification Contract to require that Wells Fargo and Defendant accept Ms. Daniels' monthly installment payments towards the Mortgage and sought sanctions against Defendant for causing Ms. Daniels' Mortgage to end up in foreclosure status despite agreeing to the Loan Modification Contract.

21. On December 27, 2015, the Foreclosure Case court denied foreclosure and found in Ms. Daniels' favor, entering an Order Granting Ms. Daniels' Motion to Enforce Loan Modification Contract ("Modification Enforcement Order"). *See* **Exhibit B**.

22. Then, on April 23, 2016, the Foreclosure Case court entered an Order on Defendant's Motion for Clarification and for Sanctions, Defendant's Motion for Attorneys' Fees, and Plaintiff's Motion to Deposit Funds in the Court registry ("Order"). *See* **Exhibit C.**

23. Relevant hereto, the Order provides that Ms. Daniels shall begin making payments pursuant to the Loan Modification Contract on April 27, 2016, which will be her May 1, 2016 payment towards the Mortgage. *See* **Exhibit C, ¶ 3.**

24. Further, the Order states that Ms. Daniels' new payments will be calculated pursuant to the interest rates set forth in the Loan Modification Contract. *See* **Exhibit C, ¶ 3.**

25. The Order also states that the following amounts were to be added to the end of the Loan Modification Contract:

   a. interest due from payments for the period of January 1, 2016 through April 1, 2016;

   b. principal payments for the period of August 1, 2010 through April 1, 2016; and

   c. escrow payments for the period of August 1, 2010 through April 1, 2016.

   *See* **Exhibit C, ¶ 3.**

26. Pursuant to the plain language of the Order, a total of $60,808.83 was to be added to the end of the Loan Modification Contract according to the following itemized categories of payment:

  a. $3,713.00 (interest due from payments for the period of January 1, 2016 through April 1, 2016);

  b. $0.00 (principal payments for the period of August 1, 2010 through April 1, 2016); and

  c. $57,095.83 (approximate escrow payments for the period of August 1, 2010 through April 1, 2016).

27. Each of Ms. Daniels' monthly payments for the four-month period of January 1, 2016 through April 1, 2016 included $928.25 in interest using the 5.5% interest rate from the Loan Modification Contract, which totals $3,713.00. *See* **Exhibit A, ¶¶ 4-5.**

28. The Loan Modification Contract provides that $0.00 in principal payments was owed for the period of August 1, 2010 through April 1, 2016. *See* **Exhibit A, ¶ 5.**

29. The escrow payments for the period of August 1, 2010 through April 1, 2016 included taxes, flood insurance, and homeowner's insurance.

30. Each of Ms. Daniels' monthly payments for the period of August 1, 2010 through April 1, 2016 included tax payments to escrow identified as follows:

  a. $208.75 monthly from Aug. 1, 2010 through December 1, 2010, totaling $1,043.75;

  b. $203.08 monthly from January 1, 2011 through December 1, 2011, totaling $2,436.96;

  c. $178.59 monthly from January 1, 2012 through December 1, 2012, totaling $2,143.08;

  d. $172.25 monthly from January 1, 2013 through December 1, 2013, totaling $2,067.00;

  e. $172.14 monthly from January 1, 2014 through December 1, 2014, totaling $2,065.68;

  f. $174.14 monthly from January 1, 2015 through December 1, 2015, totaling $2,089.68; and

  g. $174.42 monthly from January 1, 2016 through April 1, 2016, totaling $697.68.

31. Each of Ms. Daniels' monthly payments for the period of August 1, 2010 through April 1, 2016 included flood insurance to escrow identified as follows:

  a. approximately[1] $145.00 monthly from Aug. 1, 2010 through December 1, 2010, totaling $725.00;

  b. approximately $145.00 monthly from January 1, 2011 through December 1, 2011, totaling $1,740.00;

  c. approximately $145.00 monthly from January 1, 2012 through December 1, 2012, totaling $1,740.00;

  d. $145.44 monthly from January 1, 2013 through December 1, 2013, totaling $1,745.28;

  e. $145.44 monthly from January 1, 2014 through December 1, 2014, totaling $1,745.28;

  f. $145.44 monthly from January 1, 2015 through December 1, 2015, totaling $1,745.28; and

---

[1] As used here, "approximate" monthly payments were calculated based upon the flood insurance monthly payments for the time period from January 1, 2013 through April 1, 2016 because no other source documents were readily available.

  g. $142.17 monthly from January 1, 2016 through April 1, 2016, totaling $568.68.

33. Each of Ms. Daniels' monthly payments for the period of August 1, 2010 through April 1, 2016 included homeowner's insurance to escrow identified as follows:

  a. approximately[2] $500.00 monthly from Aug. 1, 2010 through December 31, 2010, totaling $2,500.00;

  b. approximately $500.00 monthly from January 1, 2011 through December 1, 2011, totaling $6,000.00;

  c. approximately $500.00 monthly from January 1, 2012 through December 1, 2012, totaling $6,000.00;

  d. $494.58 monthly from January 1, 2013 through December 1, 2013, totaling $5,934.96;

  e. $506.25 monthly from January 1, 2014 through December 1, 2014, totaling $6,075.00;

  f. $502.00 monthly from January 1, 2015 through December 1, 2015, totaling $6,024.00; and

  g. $502.00 monthly from January 1, 2016 through April 1, 2016, totaling $2,008.00.

33. Accordingly, the Order required that a total of $60,808.83 be added to the end of the Loan Modification Contract.

---

[2] As used here, "approximate" monthly payments were calculated based upon the homeowner's insurance monthly payments for the time period from January 1, 2013 through April 1, 2016 because no other source documents were readily available.

34. In addition to adding $60,808.83 to the end of the Loan Modification Contract, Order also stated that Ms. Daniels shall be making payments pursuant to the Loan Modification Contract on April 27, 2016, which would be for the May 1, 2016 payment calculated pursuant to the interest rates set forth in the Loan Modification Contract.

35. The Loan Modification Contract provides that Ms. Daniels' monthly payments are "interest only" through April 1, 2019 and are calculated by "dividing the relevant interest rate by twelve and multiplying it by the then unpaid principal." *See* **Exhibit A, ¶¶ 4-5.**

36. Accordingly, from May 1, 2016 through December 1, 2016, Ms. Daniels' monthly payment towards the Loan Modification contract should have been $928.25 because the outstanding principal was $189,599.70 and the relevant interest rate in the Loan Modification Contract was 5.875%.

37. After the Order was entered on April 23, 2016, Defendant sent several collection letters to Ms. Daniels in connection with the collection of the alleged outstanding balance owed on the Mortgage.

38. For example, Defendant sent Ms. Daniels a collection letter dated May 13, 2016 that was individually addressed to Ms. Daniels, listed the Property address, the "interest" payment of $928.73, the "regular monthly payment" of $1,837.26, an "amount due" of $137,052.41, a due date of June 1, 2016, a late fee of $30.15 if payment was received after June 16, 2016, a "delinquency notice," and options for payment ("Collection Letter 1"). *See* **Exhibit D.**

39. Defendant's Collection Letter 1 also stated that the "interest bearing principal" was $189,599.70, the "deferred principal" was $0.00, and the "outstanding principal" was $189,599.70. *See* **Exhibit D.**

40. A few months later, on November 14, 2016, Defendant sent Ms. Daniels a collection letter that demanded Ms. Daniels remit an "interest" payment of $1,335.88 despite the knowledge that Ms. Daniels' interest payment should be $928.25 pursuant to the Order ("Collection Letter 2"). *See* **Exhibit E.**

41. More troublesome still, Defendant's Collection Letter 2 stated that Ms. Daniels owed an "interest bearing principal" of $272,861.61, a "deferred principal" of $83,259.92, and an "outstanding principal" of $356,121.53. *See* **Exhibit E.**

42. Defendant's Collection Letter 2 misrepresents that Ms. Daniels owed an additional $105,401.68 on the Mortgage principal balance than what Ms. Daniels rightfully owed under the Loan Modification Contract and the Order.

43. Defendant's Collection Letter 2 was individually addressed to Ms. Daniels, listed the Property address, an "amount due" of $9,075.71, a due date of December 1, 2016, a late fee of $30.15 if payment was received after December 16, 2016, a "delinquency notice," and options for payment. *See* **Exhibit E.**

44. The next month after sending Collection Letter 2, Defendant sent Ms. Daniels a collection letter dated December 15, 2016 that also included ridiculous amounts owed ("Collection Letter 3"). *See* **Exhibit F.**

45. Collection Letter 3 stated that Ms. Daniels owed an "interest bearing principal" of $189,911.00, a "deferred principal" of $83,259.92, and an "outstanding principal" of $273,170.92. *See* **Exhibit F.**

46. Further, Defendant's Collection Letter 3 was individually addressed to Ms. Daniels, listed the Property address, an "amount due" of $2,447.79, a due date of January 1, 2017, a late fee of $30.15 if payment was received after January 16, 2017, a "delinquency notice," and options for payment. *See* **Exhibit F.**

47. Ms. Daniels continued to receive collection letters from Defendant that state she owes an "interest bearing principal" of $189,911.00, a "deferred principal" of $83.259.92, and an "outstanding principal" of $273,170.92, up through the date the instant lawsuit was filed. *See* **Composite Exhibit G.**

48. Notably, Defendant's demanded "deferred principal" balance of $83,259.92 ("Debt") due from Ms. Daniels is $22,451.07 higher than the $60,808.83 that should have been properly added to the end of the Loan Modification Contract.

49. On or around October 2, 2017, Ms. Daniels, through her counsel, sent a letter to Defendant demanding a specific line-by-line accounting of the Deferred Balance ("Demand Letter 1"). *See* **Exhibit H.**

50. Defendant did not respond to Ms. Daniels' Demand Letter 1.

51. On or around December 22, 2017, Ms. Daniels, through her counsel, sent a second letter to Defendant demanding a specific line-by-line accounting of the Deferred Balance ("Demand Letter 2"). *See* **Exhibit I.**

52. Defendant never responded to Ms. Daniels' Demand Letter 2, either.

53. To date, Defendant has not provided any support for the deferred balance of the Deferred Balance that is allegedly owed by Ms. Daniels on the Mortgage ("Debt").

54. At all times material hereto, Defendant had actual knowledge that the terms of the Modification Enforcement Order and the Order does not support the amount of the Debt.

55. Defendant's Collection Letters 1-3 and all its collection letters in Composite G were (collectively "Collection Letters") were sent in connection with the collection of the Debt.

56. None of Defendant's Collection Letters were sent for informational purposes only, nor did any of Defendant's Collection Letters state that they were sent for informational purposes only. *See* **Exhibits D, E, F, and Composite Exhibit G.**

*<u>Count 1: Violation of the Fair Debt Collection Practices Act ("FDCPA")</u>*

57. Ms. Daniels re-alleges Paragraphs 1-56 and incorporates the same herein by reference.

58. Ms. Daniels is a "consumer" within the meaning of the FDCPA.

59. The alleged mortgage debt is a "consumer debt" within the meaning of the FDCPA.

60. Defendant is a "debt collector" within the meaning of the FDCPA.

61. Defendant violated the FDCPA. Defendant's violations include, but are not limited to, the following:

   a. Defendant violated 15 U.S.C. § 1692d by improperly servicing Ms. Daniels' Mortgage despite Ms. Daniels' multiple attempts to demand a line-by-line accounting of the Debt, the natural consequence of which is to harass,

oppress, or abuse Ms. Daniels in connections with collection of the Debt.

b. Defendant violated 15 U.S.C. § 1692e (2)(A) by falsely representing the amount the Debt as $83,259.92, when Defendant knew such amount was and is $22,451.07 higher than the $60,808.83 that should have been properly added to the end of the Loan Modification Contract pursuant to the Order.

c. Defendant violated 15 U.S.C. § 1692e (2)(A) by falsely representing Ms. Daniels owed an interest payment of $1,335.88 in Collection Letter 2 despite the knowledge that Ms. Daniels' interest payment should be $928.25 pursuant to the Order and the Loan Modification Contract.

d. Defendant also violated 15 U.S.C. § 1692e (10) by using false representations in attempts to collect the alleged Debt when Defendant suddenly demanded payment of the Debt and refused to provide an accounting of the Debt.

e. Defendant violated 15 U.S.C. § 1692f (1) by using unfair or unconscionable means to collect the Debt when such amount is not authorized by the Order or the Loan Modification Contract.

62. As a result of the above violations of the FDCPA, Ms. Daniels has been subjected to illegal collection activities for which she has been damaged.

63. Defendant's actions were either intentional or grossly negligent where Ms. Daniels attempted to notify Defendant of its improper servicing of Ms. Daniels' Mortgage multiple times and Defendant still failed to correct its servicing errors. Defendant failed to follow any reasonable servicing standard that would prevent it from, for example, seeking the Debt in violation of the terms of the Loan Modification Contract and the Order. Instead, Defendant intentionally disregarded Ms. Daniels' attempts to correct the situation, which has caused Ms. Daniels extreme emotional distress. Ms. Daniels, through her counsel, has contacted Defendant regarding the improper servicing of the Mortgage, which Defendant intentionally disregarded. Defendant has failed to correct its improper calculations added to the end of the Loan Modification Contract and has improperly serviced Ms. Daniels' Mortgage for several years.

64. Defendant's actions have harmed Ms. Daniels by causing her embarrassment.

65. Defendant's actions have harmed Ms. Daniels by causing her emotional distress.

66. Defendant's actions have harmed Ms. Daniels by causing her anxiety.

67. Defendant's actions have harmed Ms. Daniels by causing her aggravation and annoyance.

68. Defendant's actions have harmed Ms. Daniels by harming her reputation.

69. It has been necessary for Ms. Daniels to retain the undersigned counsel to prosecute the instant action, for which she is obligated to pay a reasonable attorney's fee.

70. All conditions precedent to this action have occurred.

**WHEREFORE**, Plaintiff respectfully requests this Court enter a judgment against Defendant as follows:

    a.  Awarding statutory damages as provided by 15 U.S.C. 1692k(a)(2)(A) for each Plaintiff;

    b.  Awarding actual damages;

    c.  Awarding costs and attorneys' fees; and

    d.  Any other and further relief as this Court deems equitable.

### *Count 2: Violation of the Florida Consumer Collection Practices Act ("FCCPA")*

71.    Ms. Daniels re-alleges Paragraphs 1-56 and incorporates the same herein by reference.

72.    Defendant violated the FCCPA. Defendant's violations include, but are not limited to, the following:

    a.  Defendant violated Fla. Stat. § 559.72 (7) by falsely representing the amount of the Debt as $83,259.92, when Defendant knew such amount was and is $22,451.07 higher than the $60,808.83 that should have been properly added to the end of the Loan Modification Contract pursuant to the Order and continued to demand such amount as owed after Ms. Daniels' notified Defendant that the amount was improper, which can reasonably be expected to harass Ms. Daniels.

    b.  Defendant also violated Fla. Stat. § 559.72 (7) by falsely representing Ms. Daniels owed an interest payment of $1,335.88 in Collection Letter 2 despite the knowledge that Ms. Daniels' interest payment should be $928.25

        pursuant to the Order and the Loan Modification Contract, which can reasonably be expected to harass Ms. Daniels.

    c. Defendant violated Fla. Stat. § 559.72 (9) by claiming and attempting to enforce the Debt when Defendant knows that the Debt is not legitimate and that Defendant does not have the legal right to pursue the Debt pursuant to the terms of the Loan Modification Contract and the Order.

    d. Defendant also violated Fla. Stat. § 559.72 (9) by improperly demanding, and thereafter collecting, an interest payment of $1,335.88 in Collection Letter 2 despite the knowledge that Ms. Daniels' interest payment should be $928.25 pursuant to the Order and the Loan Modification Contract,

73. As a result of the above violations of the FCCPA, Ms. Daniels has been subjected to illegal collection activities and harassment for which she has been damaged.

74. Defendant's actions were done with malicious intent and with a reckless disregard of Ms. Daniels' rights, where Ms. Daniels attempted to notify Defendant of its improper servicing of Ms. Daniels' Mortgage multiple times and Defendant still failed to correct its servicing errors. Defendant failed to follow any reasonable servicing standard that would prevent it from, for example, seeking the Debt in violation of the terms of the Loan Modification Contract and the Order. Instead, Defendant intentionally disregarded Ms. Daniels' attempts to correct the situation, which has caused Ms. Daniels extreme emotional

distress. Ms. Daniels, through her counsel, has contacted Defendant regarding the improper servicing of the Mortgage, which Defendant intentionally disregarded.

75. Defendant's actions have harmed Ms. Daniels by causing her embarrassment.

76. Defendant's actions have harmed Ms. Daniels by causing her emotional distress.

77. Defendant's actions have harmed Ms. Daniels by causing her anxiety.

78. Defendant's actions have harmed Ms. Daniels by causing her aggravation and annoyance.

79. Defendant's actions have harmed Ms. Daniels by harming her reputation.

80. It has been necessary for Ms. Daniels to retain the undersigned counsel to prosecute the instant action, for which she is obligated to pay a reasonable attorney's fee.

81. All conditions precedent to this action have occurred.

**WHEREFORE**, Plaintiff respectfully requests this Court enter a judgment against Defendant as follows:

    a. Awarding statutory damages as provided by Fla. Stat. §559.77;

    b. Awarding actual damages;

    c. Awarding punitive damages;

    d. Awarding costs and attorneys' fees;

    e. Ordering an injunction preventing further wrongful contact by the Defendant; and

    f. Any other and further relief as this Court deems equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff, **CONSTANCE DANIELS**, demands a trial by jury on all issues so triable.

Respectfully submitted this **October 19, 2018**,

>*/s/ Michael A. Ziegler*
>Michael A. Ziegler, Esq.
>Florida Bar No. 74864
>mike@zieglerlawoffice.com
>
>*/s/ Kaelyn Steinkraus*
>Kaelyn Steinkraus, Esq.
>Florida Bar No. 125132
>kaelyn@zieglerlawoffice.com
>
>Law Office of Michael A. Ziegler, P.L.
>13575 58th Street North, Suite 129
>Clearwater, FL 33760
>(p)  (727) 538-4188
>(f)  (727) 362-4778
>*Attorneys and Trial Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this **19** day of **October, 2018**, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

>*/s/ Kaelyn Steinkraus*
>Kaelyn Steinkraus, Esq.
>Florida Bar No. 125132