# EXHIBIT A

RECORDING REQUESTED BY:
Countrywide Home Loans Servicing LP
Attn: Home Retention Division
100 Beecham Drive
Pittsburgh, PA 15205



610  070471482  MOD 001  001

Doc ID #: 00070471482 MOD

———————SPACE ABOVE THIS LINE FOR RECORDER'S USE———————

## LOAN MODIFICATION AGREEMENT
### (Step Rate)

This Loan Modification Agreement ("Agreement"), made this 25th day of February, 2009, between CONSTANCE DANIELS (the "Borrower(s)") and Countrywide Home Loans Servicing LP (the "Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the 31st day of January, 2005 and recorded the 31st day of January, 2005, in the Official Records of County, in the State of FL, and (2) the Note and Adjustable Rate Rider and secured by, the Security Instrument, and (3) any prior agreements or modifications in effect relative to the Note and Security Instrument which covers the real property described in the Security Instrument and defined therein as the 'Property', located at 3927 DUNAIRE DRIVE, VALRICO, FL 33594, collectively the prior documents shall be referred to herein as the "Note and Security Instrument".

The real property described being set forth as follows:

### SAME AS IN SAID SECURITY INSTRUMENT [SEE ATTACHED "EXHIBIT A"]

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note and Security Instrument):

1. **Amount of Borrower's Unpaid Principal Balance**

    As of the 1st day of April, 2009, the amount payable under the Note and Security Instrument (the "Unpaid Principal Balance") is U.S. $189,911.00, consisting of the amount(s) owed by the Borrower to the Lender and which may include, but are not limited to, any past due principal payments, interest, escrow payments, fees and/or costs ("Unpaid Amounts") which you have agreed shall be capitalized (added to the amount you originally borrowed) as one of the terms of this agreement. Any late/delinquency fees associated with overdue loan payments remaining unpaid as of the date immediately before this modification have been bo waived and not included in this capitalization. The Borrower understands that capitalizing the Unpaid Amounts may result in the Borrower paying more interest over the life of the loan.

2. **Borrower's Promise to Pay**

    The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender. If on the 1st day of March, 2035 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

    The Borrower will make such payments at 7105 Corporate Drive, (PTX-B-36), Plano, TX 75024 or at such other place as the Lender may require.

3. **Amount of Borrower's Initial Scheduled Monthly Payments**

    As of the 1st day of May, 2009, the scheduled monthly payment will be in the amount of U.S. $813.25. The scheduled monthly payment may change on that day of every twelfth month thereafter as described in Section 4 of this Loan Modification Agreement. The Lender will notify the Borrower prior to the date of change in the scheduled monthly payment. During the Interest-Only period, the amount of the monthly payment also may change if the Borrower makes voluntary prepayments of principal.

    **(A) Monthly Payment Changes**
    Changes in the monthly payment will reflect changes in the unpaid principal and in the interest rate that the Borrower must pay. The Lender will determine the changed amount of the monthly payment in accordance with Section 5 of this Loan Modification Agreement.

4. **Interest Rates**

    As of the 1st day of April, 2009, the Borrower will pay interest at a yearly rate of 3.875%. Each date on which the interest rate changes is called a "Change Date." Thereafter, the interest rate that Borrower will pay and the dates when the interest rate will change are set forth below:

Interest Rate Increases. The interest rate Borrower will pay will change as indicated below.

| Extended Interest Only Payment Period | | Principal and Interest Payment Period | |
|---|---|---|---|
| Change Date | Interest Rate | Change Date | Interest Rate |
| 04/01/2010 | 4.125% | 04/01/2019 | 6.625% |
| 04/01/2011 | 4.375% | 04/01/2020 | 6.99% |
| 04/01/2012 | 4.625% | 04/01/2021 | 6.99% |
| 04/01/2013 | 4.875% | 04/01/2022 | 6.99% |
| 04/01/2014 | 5.125% | 04/01/2023 | 6.99% |
| 04/01/2015 | 5.5% | 04/01/2024 | 6.99% |
| 04/01/2016 | 5.875% | 04/01/2025 | 6.99% |
| 04/01/2017 | 6.25% | 04/01/2026 | 6.99% |
| 04/01/2018 | 6.625% | 04/01/2027 | 6.99% |
| | | 04/01/2028 | 6.99% |

After the last Change Date, the interest rate shall remain the same until such time as the principal and interest due under the Note are paid in full.

5. Monthly Payment Changes

(A) Change Dates
Each date on which the interest rate changes is called a "Change Date."

(B) Interest-Only Payments
The first ten years following the execution of this Loan Modification Agreement are known as the "Interest-Only Period." On the first Change Date and continuing through the 11th Change Date (to the extent Section 4 provides for 11 or more rate changes), the amount of the new scheduled monthly payments will be determined by dividing the new interest rate by 12 and multiplying the result by the then unpaid principal. If the Borrower makes a voluntary prepayment of principal during the Interest-Only Period, the next monthly payment will be less. The lower monthly payment amount will be determined by dividing the new interest rate by 12 and multiplying it by the then unpaid principal. If the Borrower makes a voluntary prepayment of principal after the due date of a scheduled monthly payment, the prepayment amount will be credited immediately, but the reduction in the amount of the monthly payment may not be reflected on the billing statement until the following month.

(C) Principal and Interest Payments
On April 1, 2019 and on every Change Date thereafter, the Lender will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that the Borrower is expected to owe at the Change Date in full on the Maturity Date at the new interest rate in substantially equal payments. The result of this calculation will be the amount of the new scheduled monthly payment.

6. Impact of this Agreement on the New Interest-Only Monthly Payments and on the Amount of Interest Borrower Will Pay Over the Life of the Loan

The Borrower understands that by agreeing to add the unpaid past-due payments, including unpaid and deferred interest, fees, and other costs (collectively 'Unpaid Amounts') to the Unpaid Principal Balance, the added Unpaid Amounts accrue interest based on the interest rate in effect. The Borrower also understands that this means interest will now accrue on the unpaid interest, and that this would not happen without this Agreement.

The Borrower understands the result of this Agreement is to increase the amount of interest that will be owed over the term of the loan. This is because the amount of principal is higher and the interest due is recalculated because it is charged on that higher principal amount.

7. Impact of this Agreement on Monthly Payments at the End of the Interest-Only Period – the First Principal and Interest Payment Due Date:

After the Interest-Only Period ends, the Borrower understands the monthly payment will increase—even if the Borrower's interest rate stays the same—because the Borrower must start repaying the principal, as well as the interest, for the remainder of the loan term. Because this Agreement results in the Unpaid Amounts being added to principal, the amount of principal that is due with each monthly payment will also increase, which results in a bigger monthly payment. The Borrower also understands the need to plan for this increase in the amount of the monthly payment when the Interest-Only Period ends and that at that time the Borrower will no longer have the choice of paying only the Interest-Only monthly amount. The Borrower understands that the increase in the monthly payment amount at the First Principal and Interest Payment Due Date could be significant and result in a condition referred to as payment shock.

8. Understanding the Monthly Statement During the Interest-Only Period

The Borrower understands that the Interest-Only Loan Monthly Statement during the Interest-Only Period will offer the Borrower more payment options than just the Interest-Only Payment. Although the Borrower's Interest-Only loan offers the freedom to pay only the interest portion of the payment due each month for a specified period of time, the Borrower also understands he or she has the choice to pay additional amounts, which will assist the Borrower in paying down the principal balance. If the Borrower chooses to pay extra money beyond the Interest-Only payment amount in a given month, the Borrower understands this will reduce the principal owed. The next month, the Interest-Only payment amount the Borrower owes (assuming there has been no change in the interest rate on the Borrower's loan) will be lower. This is because the amount of principal is lower and the interest due is recalculated because it is charged on that lower principal amount. The Borrower understands that paying more and reducing principal can also mean that the Borrower will build equity in the home more quickly. The Borrower understands that the Amortized Payment Choice and 15-Year Amortized Payment Choice shown on the Interest-Only monthly statement provide the Borrower with easy ways each month to select a payment that reduces the Borrower's principal. The Borrower may, however, pay any amount above the Interest-Only Payment amount.

9. Effective of This Modification Agreement

Nothing in this agreement shall be understood or construed to be a refinance, satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security

Instrument will remain unchanged, and the Borrower and the Lender will be bound by, and comply with, all terms and provisions thereof, as amended by this Agreement.

10. **Borrowers Agreement to Assist With Lost, Misplaced, Misstated, Inaccurate or Missing Documents**

In consideration of this Modification, the Borrower agrees that if any document related to the Note and Security Instrument and/or Modification is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, the Borrower will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced the Lender hereby indemnifies the Borrower(s) against any loss associated with a demand on the original note. All documents the Lender requests of the Borrower shall be referred to as "Documents." The Borrower agrees to deliver the Documents within ten (10) days after receipt by the Borrower of a written request for such replacement.

As evidenced by their signatures below, the Borrower and the Lender agree to the foregoing.

_Constance Daniels_ (signature)
CONSTANCE DANIELS                          Dated: 3/19/09

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

On MARCH 19, 2009 before me, DENNIS JAYAG Notary Public, personally appeared CONSTANCE DANIELS

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*[Notary seal: DENNIS JAYAG, Comm# DD0554522, Expires 5/21/2010, Florida Notary Assn. Inc]*

_____
Signature

---

Countrywide Home Loans Servicing LP

By: _____           Dated: _____

STATE OF _____
COUNTY OF _____

On _____ before me, _____ Notary Public, personally appeared

_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature