# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**CONSTANCE DANIELS,**

     **Plaintiff,**

**v.**                                   **Case No: 8:18-cv-01652-JSM-CPT**

**SELECT PORTFOLIO
SERVICING, INC.,**

     **Defendant.**

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

**COMES NOW**, Plaintiff, **CONSTANCE DANIELS** ("Ms. Daniels" or "Plaintiff"), by and through the undersigned counsel, and hereby files this Response in Opposition to the Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. No. 24, "Motion") filed by Defendant, **SELECT PORTFOLIO SERVICING, INC.** ("Defendant"), and in support thereof states as follows:

## I.     INTRODUCTION

While lawyers do their best to create complexity from simplicity, the essence of what is at issue in this case is *six bills*. These six bills may be given the label "periodic monthly mortgage statements," but these documents are simply **bills**. There can be no greater exemplification of "debt collection" than sending a **bill**; Webster's dictionary defines a **bill** as "an amount expended or owed." When one goes to a restaurant and receives a **bill**, there is no belabored discussion of whether the amount at the bottom of the bill is being requested by the proprietor in attempts to collect that amount or instead simply to inform the patron of the amount

owed without any expectation of payment in response. Even the "least sophisticated consumer" knows that the restaurant **bill** is given with the expectation that the amount owed will be paid in return. The mortgage billing statements in this case are no different than the restaurant bill, irrespective of whether the formatting of the statement or the regularity of the statement is regulated by TILA. TILA requirements do not preclude the mortgage billing statements from also being debt collection attempts. As set out in detail below, the Eleventh Circuit precedent that is binding on this Court supports a common sense approach here—that the mortgage billing statements at issue are "debt collection," and as a result, Ms. Daniels' Second Amended Complaint has sufficiently alleged facts supporting her causes of action. Therefore, Defendant's Motion to Dismiss should be denied in its entirety.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to the Court's Order entered on October 5, 2018 (Doc. No. 22, "Order"), on October 19, 2018, Ms. Daniels filed her Second Amended Complaint (Doc. No. 23, "Second Amended Complaint"). Plaintiff was mindful of the observations raised by the Court in its Order, and therefore elaborately alleged detailed facts in support of Ms. Daniels' FDCPA and FCCPA claims against Defendant.

Most relevant to the Court's observations in its Order and the Motion at issue, Plaintiff's Second Amended Complaint alleges that Defendant engaged in "debt collection" activity subject to the FDCPA and FCCPA when Defendant sent Ms. Daniels at least six mortgage billing statements that misrepresented certain amounts owed on Ms. Daniels' mortgage balance, including the "deferred principal" balance and "interest payment." (Doc. No. 23 ("Compl."), ¶¶ 37, 40, 44, 47, 55).

Ms. Daniels' Second Amended Complaint attaches the six mortgage billing statements as Exhibits "E," "F," and Composite Exhibit "G." (*See* Doc. Nos. 23-5, 23-6, 23-7, collectively "Mortgage Billing Statements"). Ms. Daniels' Second Amended Complaint alleges that Defendant engaged in debt collection activity subject to the FDCPA and FCCPA because each first page of Defendant's Mortgage Billing Statements includes: a demand for an amount due, demand payment remittance by a due date, and threaten late fees if payment is received after that due date in the upper right-hand corner; a varying "Important Messages" box on either the left-hand side or middle of the page with varying levels of instructions regarding payment, delinquency, or tax/insurance payments, and state that "[t]his is an attempt to collect a debt. All information obtained will be used for that purpose;" a "**Delinquency Notice**" box on the right-hand side that states "[y]ou are late on your mortgage payments. Failure to bring your loan current may result in fees and foreclosure—the loss of your home," along with the number of days that Ms. Daniels is delinquent, each month of delinquency, the total amount due (again), a payment instruction that, "[you must pay this amount to bring your loan current," a notice that "SPS has completed the first notice or filing required to start a foreclosure," and information about obtaining reinstatement arrangements; and include a "MONTHLY PAYMENT COUPON" at the bottom with express language instructing Ms. Daniels to "[m]ake checks payable to: Select Portfolio Servicing," with further payment instructions and a third demand for the amount due, the due date, and late fees if payment is remitted after the due date. (*See* Compl. ¶¶ 40-47; Mortgage Billing Statements, pps. 1).

Ms. Daniels' Second Amended Complaint also alleges that Defendant engaged in debt collection activity subject to the FDCPA and FCCPA because each second page of Defendant's Mortgage Billing Statements includes: varying payment options—"regular payment,"

"overnight/express payment," remittance addresses, and instructions for paying by mail, a phone number to call for check by phone, and the option to pay via check by website throughout the page; "PAYMENT INSTRUCTIONS. Paying your mortgage on time is an important obligation, so lease pay on or before the payment due date. . . Please include the late charge in any payment made after the late payment due date noted on your statement," in the upper left-hand corner; "LOAN REPRESENTATIVES. If you would like to speak to someone about making a payment or payment arrangements, please call one of our loan representatives at (800) 258-8502" with hours to call to make the payment; a "CREDIT REPORTING" notification that late payments can result in negative credit reporting on the left-hand side of the page; and a "SPECIAL REQUEST AND ADDITIONAL FEES" on the bottom left-hand corner. (*See* Mortgage Billing Statements, pps. 2).

Plaintiff's Second Amended Complaint alleges that Defendant's Mortgage Billing Statements violated the FDCPA and FCCPA where the factual allegations support that:

a)  Defendant misrepresented that Ms. Daniels owed $83,259.92 in deferred principal balance on her mortgage against the plain language of a foreclosure court order that required Defendant add only $60,808.83[1] to Ms. Daniels' deferred principal balance on her mortgage and continuously attempted to collect on such illegitimate balance in

---

[1] Plaintiff has uncovered additional evidence since the time of filing her Complaint and First Amended Complaint in this action that provided the necessary data to calculate the inflated principal balance of the mortgage that Defendant continues to misrepresent Ms. Daniels owes in each collection letter it sends to Ms. Daniels. Defendant's baseless assertion in its Motion that Ms. Daniels ignores "multiple categories of amounts owed which [Ms. Daniels] has never paid and were never waived by the state court, including certain interest and escrow payments that predated August 2010, which the state court found were not waived and would continue to be due" is not supported by any attachments to Defendant's Motion, or by the relevant court order attached to Ms. Daniels Second Amended Complaint as Exhibit "C." Instead, Defendant's argument is conclusory, improper for the Motion to Dismiss stage of this litigation as it goes beyond the four corners of Plaintiff's Complaint and Exhibits, and should accordingly be disregarded by the Court.

violation of 15 U.S.C. § 1692e(2)(A), 15 U.S.C. § 1692e(10), Fla. Stat. § 559.72(7), Fla. Stat. § 559.72(9) (*See* Compl., ¶¶ 25, 26, 30, 31, 32, 33, 45, 47, 48, 61(b), 72(a));

b) Defendant misrepresented that Ms. Daniels owed an outstanding principal balance of $356,121.53, including an interest-bearing principal balance of $272,861.61, in November of 2016 when such amount directly contradicted the mortgage modification contract enforced by the foreclosure court when it denied foreclosure and attempted to collect such illegitimate amount in violation of 15 U.S.C. § 1692e(2)(A), 15 U.S.C. § 1692e(10), Fla. Stat. § 559.72(7), Fla. Stat. § 559.72(9) (*See* Compl., ¶¶ 41, 42, 61(d)-(e), 72(c));

c) Defendant misrepresented that Ms. Daniels was required to pay an "interest" payment of $1,335.88 in November of 2016 against the plain language of the foreclosure court order stating that Ms. Daniels' interest payment should have been $928.25 in November of 2016 and Defendant attempted to collect such illegitimate amount in violation of 15 U.S.C. § 1692e(2)(A), 15 U.S.C. § 1692e(10), Fla. Stat. § 559.72(7), Fla. Stat. § 559.72(9) (*See* Compl., ¶¶ 24, 36, 40, 61(c), 72(b), 72(d)); and

d) Defendant continued to misrepresent the principal balance owed on Ms. Daniels' mortgage despite Ms. Daniels' multiple requests for a line-by-line accounting from Defendant in violation of 15 U.S.C. § 1692d, 15 U.S.C. § 1692f, and Fla. Stat. § 559.72(7) (*See* Compl., ¶¶ 47- 53, 61(a), 61(e), 72(a), 72(c)).

Further, Ms. Daniels' Complaint alleges that Defendant continued to send letters in connection with the collection of the improper balances to Ms. Daniels that misrepresented the amounts owed up through the date the instant lawsuit was filed. (Compl., ¶ 47; Composite Exhibit "G").

### III.    MEMORANDUM OF LAW

#### 1.    <u>Motion to Dismiss Standard</u>

When reviewing a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12 (b) (6), the court must accept all factual allegations contained in the complaint as true and view the facts in a light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (U.S. 2007); *Hall v. Global Credit & Collection Corp.*, No. 8:16-cv-1279-T-30AEP, 2016 WL 4441868, at *1 (M.D. Fla. Aug. 23, 2016).

To overcome a motion to dismiss, a plaintiff must plead only sufficient facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (explaining that a court asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."). This threshold is low, as the Eleventh Circuit continues to read the pleading standard under *Twombly* as a standard that calls for only enough fact to raise a reasonable expectation that "discovery will reveal evidence of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F. 3d 1308, 1309-10 (11th Cir. 2008) (further reasoning that "[i]t is sufficient if the complaint succeeds in 'identifying facts that are suggestive enough to render [the element] plausible.").

#### 2.    <u>Ms. Daniels' Second Amended Complaint Alleges that Defendant has Engaged in "Debt Collection Activity" in Violation of the FDCPA and FCCPA.</u>

The Court should deny Defendant's Motion in full because: A.) the Eleventh Circuit's binding decisions hold that Defendant's letters attached to Plaintiff's Second Amended Complaint as Exhibits "E," "F," and Composite Exhibit "G" are debt collection activity subject to the FDCPA and FCCPA; B.) TILA does not absolve Defendant from liability under the

FDCPA and FCCPA; and C.) Defendant's arguments in its Motion would create a loophole in the FDCPA that is contrary to the public policy considerations underlying the FDCPA.

**A. Defendant's Mortgage Billing Statements are "Debt Collection" under Binding Eleventh Circuit Precedent.**

The FDCPA and FCCPA prohibit debt collectors from using a "false deceptive, or misleading representation or means in connection with the collection of any debt." *See* 15 U.S.C. § 1692; Fla. Stat. § 559.72. It is axiomatic then that the "challenged conduct is related to debt collection" to state a claim under either statute. *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012); *see also Garrison v. Caliber Home Loans, Inc.*, 233 F.Supp.3d 1282, 1286 (M.D. Fla. 2017) (internal citations omitted). Notably, Defendant neglects to cite to even one Eleventh Circuit case supporting any of the arguments in its Motion.

In assessing whether a particular communication or act is prohibited under the FDCPA, the Eleventh Circuit applies the "least-sophisticated consumer" standard, which is an objective test. *Garrison*, 233 F.Supp.3d at fn 11 (citing *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010)). The Eleventh Circuit has analyzed whether communications from creditors are "debt collection activity" subject to the FDCPA and FCCPA several times over and each of the Eleventh Circuit decisions only point to one outcome here—that Defendant's Mortgage Billing Statements are "debt collection activity" subject to the FDCPA and FCCPA. In *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299 (11th Cir. 2014), the Court analyzed whether the communications at issue were "debt collection" subject to the FDCPA and FCCPA, and held that:

> Several courts have stated that the Act defines communication expansively. The Second Circuit held that if a communication conveys information about a debt and its aim is at least in part to induce the debtor to pay, it falls within the scope of the Act. *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 116 (2d

Cir.1998). This Court adopted that reasoning in *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1218 (11th Cir.2012), where we rejected a law firm's argument that a letter pertaining to a secured debt did not fall under the Act's strictures. In *Reese*, we looked at the language of the letter to determine that it was an attempt to collect a debt. *Id*. at 1217. **We pointed specifically to the statements in the letter that the lender demanded full and immediate payment, threatened that unless the debtors paid, attorneys' fees would be added, and stated that the law firm was attempting to collect a debt and was acting as a debt collector; we held it was an attempt to collect a debt.** *Id*. We rejected the law firm's argument that it was simply to inform the debtors that the lender was seeking a nonjudicial foreclosure; we stated we would not ignore the statements demanding payment and pointed out that a communication can have more than one purpose. *Id*. We stated, "The fact that the letter and documents relate to the enforcement of a security interest does not prevent them from also relating to the collection of a debt within the meaning of § 1692e." *Id*.

*Id*. at 1302-03 (emphasis added).

The Eleventh Circuit used the same five-factor test again in *Pinson v. Albertelli Law Partners, LLC*, 618 Fed.Appx. 551, 553-54 (11th Cir. 2015), where the Court reasoned that:

In *Caceres,* we noted that, when determining whether a communication is "in connection with the collection of any debt," courts should look to the language of the letters in question, **specifically to statements that demand payment, discuss additional fees if payment is not tendered, and disclose that the law firm was attempting to collect a debt and was acting as a debt collector**. *Caceres,* 755 F.3d at 1302; *see also Reese,* 678 F.3d at 1217. A communication can have more than one purpose, for example, providing information to a debtor as well collecting a debt. *Caceres,* 755 F.3d at 1302; *see also Reese,* 678 F.3d at 1217. A demand for payment need not be express; **there may be an implicit demand for payment where the letter states the amount of the debt, describes how the debt may be paid, provides the phone number and address to send payment, and expressly states that the letter is for the purpose of collecting a debt**. *Caceres,* 755 F.3d at 1303 & n.2.

*Pinson*, 618 F. App'x at 553 (emphasis added).

The Eleventh Circuit also applied its five-factor test in *Kinlock v. Wells Fargo Bank, N.A.*, 636 Fed.Appx. 785, 787 (11th Cir. 2016). In that instance, the Court found the subject letter was not "communication sent in connection with the collection of a debt" when the plaintiff's complaint alleged that the defendant had offered to provide the plaintiff funds in exchange for plaintiff vacating the subject property. The Court reasoned that because the plaintiff's alleged facts showed no demand for payment, the plaintiff's allegations were not sufficient to sustain an FDCPA claim.

It is well-settled that communication that qualifies as debt collection does not cease to be debt collection simply because it relates to a mortgage. The Eleventh Circuit answered that question unequivocally in *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217 (11th Cir. 2012) (finding that a collection letter may have a "dual purpose" to collect on the security instrument and on the debt) and again in *Birster v. Am. Home Mortgage Servicing, Inc.*, 481 Fed.Appx. 579, 583 (11th Cir. 2012). Likewise, Florida State law has found that collection on mortgage debt may be "debt collection" if the majority of the five factors are met. *Gann v. BAC Home Loans Servicing LP*, 145 So.3d 906, 907 (Fla. 2d DCA 2014).

The Middle District of Florida has consistently applied the Eleventh Circuit's five-factor test to determine whether a mortgage statement is "communication sent in connection with the collection of a debt" subject to the FDCPA and FCCPA, finding that when a majority of the factors are met, the mortgage statement is "communication sent in connection with the collection of a debt." *Roth v. Nationstar Mortgage, LLC*, No. 2:15-cv-783-FtM-29MRM, at *3 (M.D. Fla. July 1, 2016); *Galle v. Nationstar Mortgage, LLC*, No. 2:16-cv-00407-FtM-38CM, 2016 WL 4063274, at *3 (M.D. Fla. July 29, 2016); *McCamis v. Servis One, Inc. d/b/a BSI Financial Services, Inc.*, No. 8:16-cv-1130-T-30AEP (M.D. Fla. July 29, 2016); *Melentyev v. Rushmore*

*Loan Management Services, LLC*, No. 8:17-cv-306-T-26MAP, 2017 WL 1733337, at *1 (M.D.

Fla. Apr. 17, 2017); *Leahy-Fernandez v. Bayview Loan Servicing, LLC*, 159 F.Supp.3d 1294,

1303-04 (M.D. Fla. 2016); *Chapman v. McCabe Law Group, P.A.*, No. 3:17–cv–193–J–25JBT,

2017 WL 2333710, at *2 (M.D. Fla. May 25, 2017); *Sellers v. Rushmore Loan Management*

*Services, LLC*, No. 3:15-cv-1106-J-32PDB, 2017 WL 1683613, at *6 (M.D. Fla. May 3, 2017);

*Foster v. Green Tree Servicing, LLC*, No. 8:15-cv-1878-T-27MAP, 2017 WL 5151354, at *5-6

(M.D. Fla. Nov. 3, 2017). The monthly statements attached to the complaint in *Roth*, *Galle,*

*Melentyev, Leahy-Fernandez,* and *Foster* are publicly available and one statement from each is

attached hereto as **Composite Exhibit "A."**

This Court has also held that Defendant's mortgage statements are "debt collection"

subject to the FDCPA and denied this Defendant's prior motion to dismiss accordingly. *See*

*Wright v. Select Portfolio Servicing, Inc.*, No. 8:14-cv-2298-T-30TGW, at *5 (M.D. Fla. Feb. 2,

2015) (denying defendant's motion to dismiss and holding that defendant's mortgage statements

were "debt collection" and its arguments on its motion to dismiss were more appropriate for

summary judgment). The monthly statements attached to the complaint in *Wright* are publicly

available and one statement is attached hereto as **Exhibit "B."**

The Southern District of Florida, which is heavily cited in Defendant's Motion, has also

held that Defendant's mortgage statements are "debt collection" subject to the FDCPA. *Lear v.*

*Select Portfolio Servicing, Inc.*, No. 17-62206-CIV-ZLOCH, 309 F.Supp.3d 1237, 1240 (S.D.

Fla. 2018) (applying the Eleventh Circuit's decision in *Pinson* to hold that Defendant's

statements were "debt collection communications" because they include instructions for paying

by mail and a statement that "[t]his is an attempt to collect a debt. All information will be used

for that purpose"). The monthly mortgage statements attached to the complaint in *Lear* are publicly available and one statement is attached hereto as **Exhibit "C."**

Here, under the Eleventh Circuit's binding precedent, Ms. Daniels' Second Amended Complaint sufficiently alleges that Defendant's Mortgage Billing Statements are "debt collection" subject to the FDCPA because Ms. Daniels' Second Amended Complaint alleges the five-factor test is met when each of Defendant's Mortgage Billing Statements demand an amount due, payment remittance by a due date, threaten late fees if payment is received after that due date, and offer options for payment. (Compl., ¶¶ 37, 40, 43, 44, 46, 47, 55). Ms. Daniels' Second Amended Complaint also attaches the six letters as Exhibits "E," "F," and Composite Exhibit "G" and incorporates the same by reference. (Compl., ¶¶ 40, 41, 42, 43,44, 45, 46, 47; *see also* Mortgage Billing Statements).

Ms. Daniels' Second Amended Complaint alleges the specific material misrepresentation contained in each of Defendant's Mortgage Billing Statements: (i.) Defendant's November 14, 2016 Mortgage Billing Statement's demand that Ms. Daniels pay $407.63 more for her "interest" payment than was properly owed under the Loan Modification Contract and prior order; (ii.) Defendant's November 14, 2016 Mortgage Billing Statement's demand that Ms. Daniels pay $105,401.68 more on her principal balance than owed under the Loan Modification Contract and prior order; and (iii.) Defendant's December 15, 2016 through April 13, 2017 Mortgage Billing Statements' demand that Ms. Daniel owed an "interest bearing principal" of $189,911.00, a "deferred principal" of $83,259.92, and an "outstanding principal" of $273,170.92. (Compl., ¶¶ 40, 41, 42, 45, 47, 48; *see also* Mortgage Billing Statements). Further, Ms. Daniels' Complaint alleges that Defendant continued to send letters in connection with the collection of the improper

balances to Ms. Daniels that misrepresented the amounts owed up through the date the instant lawsuit was filed. (Compl., ¶ 47, Composite Exhibit "G").

A comparison between Defendant's Mortgage Billing Statements attached to Ms. Daniels' Second Amended Complaint as Exhibits "E," "F," and Composite Exhibit "G" and the sample mortgage billing statements from *Roth*, *Galle*, *Melentyev*, *Leahy-Fernandez*, *Foster*, *Wright*, and *Lear* confirm that both Defendant's Mortgage Billing Statements and the sampling of other mortgage billing statements found to violate the FDCPA and FCCPA all include a majority of the Eleventh Circuit's five factors—a demand an amount due, demand payment remittance by a due date, threaten late fees if payment is received after that due date, and offer options for payment. (*Compare* Mortgage Billing Statements with **Composite Exhibit A, Exhibit B,** and **Exhibit C** attached hereto and incorporated by reference). Accordingly, under the Eleventh Circuit's binding precedent, Ms. Daniels' Second Amended Complaint sufficiently alleges facts supporting that the "least sophisticated consumer" would believe that Defendant's Mortgage Billing Statements, attached to Ms. Daniels' Second Amended Complaint as Exhibits "E," "F," and Composite Exhibit "G," were "debt collection" subject to the FDCPA and FCCPA. *See LeBlanc*, 601 F.3d at 1194. Defendant's Motion should therefore be denied in full.

## B. TILA does not Absolve Defendant from Liability under the FDCPA and FCCPA.

Defendant argues in its Motion that TILA's requirement to send monthly mortgage statements to Ms. Daniels automatically absolves it from liability for its material misrepresentations in the Mortgage Billing Statements under the FDCPA and FCCPA. This argument is erroneous where: (i.) a monthly mortgage statement can serve multiple purposes, including serving as attempted debt collection, while also meeting the requirements under TILA; (ii.) the Mortgage Billing Statements include debt collection language that exceeds the

requirements under TILA; and (iii.) the cases cited by Defendant are not binding, are unreliable, and thereby should not be persuasive.

### i.   *Mortgage Statements can Qualify as Debt Collection*

As the Eleventh Circuit held in *Reese*, 678 F.3d at 1218, a mortgage statement can serve more than one purpose, including serving as a debt collection attempt. In the instant case, while Defendant may have sent out the Mortgage Billing Statements in part to comply with TILA,[2] such purpose does not prevent the Mortgage Billing Statements from also serving as an attempt to collect a debt and qualifying as "debt collection" under the FDCPA and FCCPA.

The Truth in Lending Act, 15 U.S.C. § 1601, *et. seq.* ("TILA"), requires the servicer of a mortgage to send periodic statements to the consumer. *See* 15 U.S.C. § 1638(f); 12 C.F.R. § 1026.41(a). Relevant here, TILA specifically enumerates twelve items required to be included in a periodic mortgage statement. These items are: (1) the outstanding balance, (2) charges, (3) credits, (4), finance charges, (5) applicable percentage rates, (6) the total finance charge expressed as annual percentage rate, (7) the balance on which the finance charge was computed and how that balance was determined, (8) the outstanding balance at the end of the period, (9) the grace period, (10) an address for billing inquiries, (11) a "Minimum Payment Warning," and (12) late payment deadlines and penalties. 15 U.S.C. § 1637(b). However, the mortgage servicer is not required to include a demand for payment in those statements. *Id.*; *see also Kelliher v. Target National Bank*, 826 F. Supp. 2d 1324, 1329 (M.D. Fla. 2011). The CFPB has issued a sample monthly mortgage statement as further guidance. (*See* Doc. No. 24-1, Exhibit "A" to Defendant's Motion, "CFPB Form").

---

[2] There is nothing on the face of Plaintiff's complaint which supports that the statements were sent out for the purpose of satisfying TILA.  At best, this issue should be raised as an affirmative defense and should not be grounds for a motion to dismiss.

TILA works in conjunction with other consumer protection laws, including the FDCPA and FCCPA; TILA expressly provides that it does not "annul, alter, or affect the laws of any State relating to the disclosure of information in connection with credit transactions, except to the extent that those laws are inconsistent with the provisions of this title, and then only to the extent of its inconsistency." 15 U.S.C. § 1610(a)(1). Intuitively, a creditor should comply with both TILA and FDCPA; there is certainly nothing in TILA which promotes or allows for creditors to communicate false or misrepresentative information to consumers. 15 U.S.C. § 1637(b).

It is entirely possible for a creditor to comply with both TILA and the FDCPA, as a creditor can disclose what is required by TILA while at the same time complying with the FDCPA by "stopping short of debt collection" in its communication. *Kelliher*, 826 F. Supp. 2d at 1328 (finding that Congress did not intend for TILA and Regulation Z to completely occupy the field and preempt broader, more protective state consumer protection and debt collection laws); *Lear*, 309 F.Supp.3d at 1240 ("A loan servicer must perform its duties under TILA, but a periodic statement that is sent pursuant to TILA may violate the FCCPA and FDCPA, causing the servicer to be liable under the letter statutes."). Further, in *France v. Ditech Financial, LLC*, No. 8:17-cv-3038-T-24MAP, 2018 WL 1695405, at*6 (M.D. Fla. Apr. 6, 2018), the court held that mortgage billing statements that misrepresented amounts owed were in violation of the FDCPA and FCCPA, regardless of whether those mortgage billing statements were sent pursuant to TILA.

In *Foster*, 2017 WL 5151354 at *5, the Middle District rejected the defendant's argument that the CFPB "[b]ulletin acknowledges "a [s]ervicers' obligation to provide certain notices/communications to borrowers who have exercised their right under the FDCPA barring

debt collectors from communicating with them" and that the "FDCPA 'cease communication' option does not generally make servicers that are debt collectors liable under the FDCPA if they comply with certain provisions." *Id.* The *Foster* court found that the CFPB Bulletin was inapplicable, just as the Court should find here, because the plaintiffs were bringing their claims under 15 U.S.C. §1692c(a)(2), whereas the Bulletin **only** addresses violations of 15 U.S.C. §1692c(c). *Id.*

Here, the CFPB Bulletin referenced in Defendant's Motion is inapplicable due to the limited scope of the Bulletin as discussed in *Foster* and the vast difference between the circumstances described in the Bulletin (a "cease and desist request" from the consumer and 15 U.S.C. §1692c(c) violations) and the circumstances here—Defendant's improper servicing of Ms. Daniels' home mortgage loan and material misrepresentations of certain amounts owed in the Mortgage Billing Statements. Further, Ms. Daniels' Second Amended Complaint does not allege any 15 U.S.C. § 1692c violation against Defendant. Instead, Ms. Daniels' Second Amended Complaint alleges that Defendant's Mortgage Billing Statements violated 15 U.S.C. § 1692d, 15 U.S.C. § 1692e(2)(A), 15 U.S.C. § 1692e(10), 15 U.S.C. § 1692f, Fla. Stat. § 559.72(7), and Fla. Stat. § 559.72(9). Accordingly, TILA and the CFPB Bulletin do not absolve Defendant from liability here, Defendant's argument should be rejected, and its Motion denied.

> ### ii. Defendant's Mortgage Billing Statements include information not required of TILA, further solidifying their qualification as "debt collection" under the FDCPA

Assuming, arguendo, that a servicer's strict compliance with the CFPB Form could bring a periodic mortgage statement outside the definition of "debt collection" under the FDCPA, such rule would not protect Defendant from liability here because the Mortgage Billing Statements at issue include "debt collection" language far beyond that required by TILA and the CFPB Form.

In *Jackson v. Carrington Mortg. Servs., LLC*, No. 17-60516-CIV, 2017 WL 4347382, at

*3 (S.D. Fla. Sept. 29, 2017), *reconsideration denied*, No. 17-60516-CIV, 2017 WL 5513704

(S.D. Fla. Nov. 17, 2017), the Southern District analyzed the proposition that mortgage

statements sent pursuant to TILA cannot violate the FDCPA and held that:

> Defendant asserts its September 22, 2016 communication to
> Plaintiff is not considered debt collection activity because it is
> required to send mortgage statements to Plaintiff under the Federal
> Truth in Lending Act ("TILA"). (*See* Mot. 4-5); *see also* 12 C.F.R.
> § 1026.41(a)(2). That point takes the Defendant only so far.
> In *Pinson*, the Eleventh Circuit stated "[a] communication can
> have more than one purpose, for example, providing information to
> a debtor as well [as] collecting a debt." *Pinson*, 618 Fed.Appx. at
> 553 (alterations added; citations omitted).
>
> . . .
>
> The fact that periodic account statements are required under TILA
> is not dispositive of whether Defendant's activity is related to debt
> collection. Consequently, there remains a factual dispute as to
> whether the September 22 communication from Carrington also
> constituted activity "in connection with the collection of any debt."
> 15 U.S.C § 1692e.

*Jackson*, 2017 WL 4347382, at *3. The *Jackson* court noted that defendant Carrington

had provided as an exhibit to its motion to dismiss the sample CFPB Form that is also attached to

Defendant's Motion here as Exhibit "A."[3] *Id.* The *Jackson* court goes on to state that:

> While Defendant claims "the statement is nearly verbatim identical
> in content and form" to the bulletin (Mot. 4), the September 22
> communication makes one significant change—**it adds a Payment
> Coupon to the form**. (*See* Mortgage Statement). Plaintiff argues
> the Payment Coupon, along with the listing of two $36.76 late fees,
> a total amount due of $108,444.92, and a delinquency notice, make
> it plausible for "the least sophisticated consumer [to] believe this
> was an attempt to collect a debt.

*Jackson*, 2017 WL 4347382, at *3 (emphasis added).

---

[3] Doc. No. 24-1.

The monthly mortgage statements attached to the complaint in *Jackson* are publicly available and one statement is attached hereto as **Exhibit "D."** In short, the *Jackson* court determined that the Payment Coupon addition to the CFPB Form, combined with Carrington's misrepresentations of certain amounts owed under the mortgage, contained in Carrington's mortgage statements were sufficient to cross the line into debt collection and violate the FDCPA.

Next, in *Foster*, 2017 WL 5151354 at *5, the court considered the same argument and found persuasive that the defendant's billing statements included debt collection language that was not required by either TILA or Regulation X or Z. *Id*. The defendant's added debt collection language included "payment coupons, due dates, and a notice that "[t]he loan may be reinstated by paying only the reinstatement amount," and informing the reader that he or she may contact the defendant "for the exact amount required for reinstatement." *Id*. The *Foster* court also found that the mortgage statements constituted debt collection activity. *Id*.

Again, in *Lear*, 309 F.Supp.3d at 1239-40, the court held that Defendant's mortgage statements go "beyond that which is required by TILA, and the statements appear to be debt collection communications that violate the FCCPA and FDCPA" because the statements "include instructions for paying by mail and each statement features a notice saying, "This is an attempt to collect a debt. All information obtained will be used for that purpose."" *Id.*

Here, Defendant's Mortgage Billing Statements attached to Ms. Daniels' Second Amended Complaint are nearly identical to those in *Lear*, *Foster*, and *Jackson*. (Compare Compl., Ex. "E," "F," and Composite Exhibit "G," with **Exhibit "C,"** *Foster* statement from **Composite Exhibit "A,"** and **Exhibit "D"**). In comparison to the CFPB Form attached to Defendant's Motion as Exhibit "A," Defendant's Mortgage Billing Statements attached to Ms.

Daniels' Second Amended Complaint as Exhibits "E," "F," and Composite Exhibit "G" go

beyond that which is required by TILA by adding debt collection language as follows:

a) varying notices that get more severe as the "delinquency" increases with each Mortgage Billing Statement, which include, "[t]his is an attempt to collect a debt. All information obtained will be used for that purpose;" "*Loan Due Date: if this date is different from your Payment Due Date, it means that you are pat due and owe payments from previous months;" under the "Important Messages" box on page one in the lower left hand corner;

b) including a "MONTHLY PAYMENT COUPON" at the bottom of the first page, which is an overt effort at debt collection evidenced by the express language associated with the Coupon:
   i. "Make checks payable to: Select Portfolio Servicing;"
   ii. "Monthly Payment $_____"
   iii. "Additional Principal $_____"
   iv. "Additional Escrow $_____"
   v. "Late Fees $_____"
   vi. "Other (Please Specify) $_____"
   vii. "Due by 12/01/2016: $9,075.71"
   viii. "$30.15 late fee will be charged after 12/16/2016"

c) "[a]lso, there are a number of options available to assist consumers who are experiencing difficulty with their payments. Please contact us immediately to discuss these options, arrange a reinstatement, or address any questions regarding the statement at (888) 818-6032;" in the "**Delinquency Notice**" box in the lower right hand corner of the first page;

d) "SPS" has completed the first notice or filing required to start a foreclosure" in the "**Delinquency Notice**" box in the lower right hand corner of the first page;

e) "Total: $137,052.41 due. You must pay this amount to bring your loan current," in the "**Delinquency Notice**" box in the lower right hand corner of the first page.

f) The entirety of the second page, which includes things like:
   i. Payment options at the top of the page—"regular payment" and "overnight/express payment" remittance addresses and instructions for paying by mail, a phone number to call for check by phone, and the option to pay via check by website;

ii. "PAYMENT INSTRUCTIONS. Paying your mortgage on time is an important obligation, so please pay on or before the payment due date," in the upper left hand corner;

iii. "Please include the late charge in any payment made after the late payment due date noted on your statement," in the upper left hand corner;

iv. We do not accept payments in cash," in the upper left hand corner;

v. "AUTOMATED CONVERSION OF YOUR CHECKS TO ACH DEBIT ENTRIES AND RETURNED CHECKS OR DEBITS. When you provide us a check, you authorize us to use the information from your check to make a one-time Electronic Funds Transfer from your bank account," in the left hand column;

vi. "LOAN REPRESENTATIVES. If you would like to speak to someone about making a payment or payment arrangements, please call one of our loan representatives at (800) 258-8502" with hours to call to make the payment," in the left hand column;

vii. "CREDIT REPORTING. SPS furnishes information to consumer reporting agencies. You are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your Note and Mortgage," in the left hand column; and

viii. "SPECIAL REQUEST AND ADDITIONAL FEES. "check by Phone or Website (EZPay) – Up to $15.00;" "Returned Check Fee – Up to $25.00;" "Express Mail Fee – Actual Charge Incurred," in the lower left hand column.

These words, which Defendant voluntarily placed in the Mortgage Billing Statements at issue, take the statements outside of strict TILA compliance in the CFPB Form, and result in letters with the purpose of debt collection activity subject to the FDCPA and FCCPA. Defendant's Motion ignores that its Mortgage Billing Statements go beyond the CFPB Form requirements and *also* contain debt collection language. Defendant's addition of the above-identified debt collection language to its Mortgage Billing Statements transforms the statements from an informational shield intended to protect consumers into a sword, disguised as disclosure,

used for debt collection in violation of both the remedial purpose and the literal language of the FDCPA and FCCPA. Defendant's Motion should therefore be denied in full.

### iii. The cases cited by Defendant are not binding, are unreliable, and thereby should not be persuasive.

Defendant's Motion hangs its hat on a string of cases that all cite each other but fail to do any real analysis in support of the argument that mortgage statements sent pursuant to TILA cannot violate the FDCPA; each of these three cases are not binding, are unreliable, and should not be persuasive to this Court.

First, Defendant cites *Brown v. Select Portfolio Servicing, Inc.*, No. 16-62999-CIV, 2017 WL 1157253 (S.D. Fla. Mar. 24, 2017), which failed to do any analysis on the mortgage statement's additional "debt collection" language beyond that which is required under the CFPB Form. Had the *Brown* court reviewed the subject mortgage statement, it would have found that the majority of the additional pieces of information considered in *Jackson*, *Foster*, and *Lear*— including the lynchpin Payment Coupon—are included in the *Brown* mortgage statement.

Next, Defendant cites *Jones v. Select Portfolio Servicing, Inc.*, No. 18-cv-20389, 2018 WL 2316636 (S.D. Fla. May 2, 2018), which is inapplicable to the instant case because the *Jones* decision dealt with alleged violations of the FCCPA and FDCPA based upon contacting a represented party after a "cease" request. As discussed above, the *Jones* court analysis relied upon the CFPB Bulletin to hold that the mortgage statements were not "debt collection" because "according to the CFPB guidance, lenders and servicers that have been instructed to "cease communication" are permitted to send periodic statements to borrowers who have defaulted so long as the communications substantially comply with the TILA regulations." *Id*. at *4. The *Jones* court also cited *Brown* and broadly held that because the *Brown* court found the mortgage statement was not "debt collection" subject to the FDCPA, neither was the *Jones* statement. Both

decisions neglected to apply the Eleventh Circuit standard or do any analysis of the requirements under TILA.

Finally, Defendant cites the most recent decision in *Mills v. Select Portfolio Servicing, Inc.*, No. 18-cv-61012-BLOOM/Valle, 2018 WL 5113001 (S.D. Fla. Oct. 19, 2018), which actually supports Ms. Daniels' position in this case rather than Defendant's. The *Mills* court cited *Jones* and found that the subject mortgage statements were not "debt collection" under the plaintiff's Counts I and III claims that defendant violated the FDCPA, 15 U.S.C. § 1692c, and FCCPA, Fla. Stat. § 559.72(18), by communicating with the plaintiff when the plaintiff was represented by counsel. *Id.* at *2. Interestingly, the *Mills* court found that the same subject mortgage statements **were** "debt collection" under the plaintiff's Counts II and IV claims that defendant violated the FDCPA, 15 U.S.C. § 1692e, and FCCPA, Fla. Stat. § 559.72(9), by misrepresenting the amount of the mortgage loan debt. *See Id.* at *5 (holding that "Defendant's motion to dismiss Counts II and IV is **denied** as to the Mortgage Statements only.").

Here, Ms. Daniels' Second Amended Complaint does not allege that Defendant's Mortgage Billing Statements violated the FDCPA, 15 U.S.C. § 1692c, or FCCPA, Fla. Stat. § 559.72(18), for contacting her while being represented by counsel. Instead, Ms. Daniels' Second Amended Complaint alleges that Defendant violated the FDCPA, 15 U.S.C. § 1692e, and FCCPA, Fla. Stat. § 559.72(9), by misrepresenting certain amounts owed under her mortgage balance. As in *Mills*, Defendant's Mortgage Billing Statements that misrepresent certain amounts owed under Ms. Daniels' mortgage and include debt collection language beyond that which is required under TILA are "debt collection" subject to the FDCPA and FCCPA. Finally, both *Brown* and *Jones* fail to include any analysis as to whether the subject mortgage statements were

"debt collection" and apply the CFPB Bulletin improperly. Accordingly, Defendant's cited case law is not binding, is unreliable, and should not be persuasive to this Court.

## IV. DEFENDANT'S ARGUMENTS WOULD CREATE A LOOPHOLE IN THE FDCPA THAT IS CONTRARY TO PUBLIC POLICY

It would create a gaping hole in the FDCPA and FCCPA's consumer protections to release debt collectors from liability for violations thereof simply because the debt collector sent a mortgage statement in compliance with TILA. Previously, the Eleventh Circuit examined an analogous issue in *Reese*, 668 F.3d at 1217-18, and found the subject communications were "debt collection" by reasoning that:

> The rule the Ellis law firm asks us to adopt would exempt from the provisions of § 1692e any communication that attempts to enforce a security interest regardless of whether it also attempts to collect the underlying debt. **That rule would create a loophole in the FDCPA. A big one.** In every case involving a secured debt, the proposed rule would allow the party demanding payment on the underlying debt to dodge the dictates of § 1692e by giving notice of foreclosure on the secured interest. **The practical result would be that the Act would apply only to efforts to collect unsecured debts.** So long as a debt was secured, a lender (or its law firm) could harass or mislead a debtor without violating the FDCPA. That can't be right. It isn't. A communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest. A debt is still a "debt" even if it is secured.

*Id.* (internal citations omitted) (emphasis added).

Here, the rule that Defendant is asking the Court to adopt would create a big loophole in the FDCPA that would allow any mortgage servicer sending a periodic mortgage statement pursuant to TILA to dodge the dictates of the FDCPA and harass or mislead a debtor. Just as the Eleventh Circuit held in *Reese*, such a rule cannot be right; it just isn't. If the Court were to adopt such a rule, mortgage servicers may have wholly unchecked power to represent whatever payment terms, fees, or demands they feel appropriate to induce payment in response to a

mortgage statement so long as the document looks like the CFPB Form. Such an interpretation is contrary to the intent of the FDCPA and FCCPA, which protect unsophisticated consumers against unlawful and misrepresentative debt collection. Accordingly, Defendant's Motion should be denied in its entirety.

      **WHEREFORE**, Plaintiff, **CONSTANCE DANIELS**, respectfully requests this Court deny Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint in its entirety, order that Defendant file an Answer and Affirmative Defenses, if any, to Plaintiff's Second Amended Complaint within fourteen (14) days of entry of such order, and for such other and further relief this Court deems just and equitable under the premise.

      Respectfully submitted this **November 16, 2018,**

*/s/ Kaelyn Steinkraus*
Kaelyn Steinkraus, Esq.
Florida Bar No. 125132
kaelyn@zieglerlawoffice.com

*/s/ Michael Ziegler*
Michael A. Ziegler, Esq.
Florida Bar No. 74864
mike@zieglerlawoffice.com

Law Office of Michael A. Ziegler, P.L.
13575 58th Street North, Suite 129
Clearwater, FL 33760
(p) (727) 538-4188
(f) (727) 362-4778
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this **16** day of **November, 2018**, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

_/s/  Kaelyn Steinkraus_
Kaelyn Steinkraus, Esq.
Florida Bar No. 125132